JACKSON COCA COLA BOTTLING CO. *v.* HARRY CHAPMAN.

[64 South. 791.]

FOOD. *Bottled beverages. Injurious foreign substances. Liability of manufacturer.*

When a mannufacturer makes, bottles and sells to the retail dealer, to be again sold to the general public, a beverage represented to be refreshing and harmless, he is under a legal duty to see to it that, in the process of bottling, no foreign substance shall be mixed with the beverage, which, if taken into the human constitution, will be injurious. And this duty the bottler owes to the general public for whom these drinks are intended as well as to the retailer, to whom he sells.

APPEAL from the circuit court of Hinds county.

HON. W. A. HENRY, Judge.

Suit by Harry Chapman, by his next friend Nellie Chapman, against the Jackson Coca Cola Bottling Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Chalmers Alexander*, for appellant.

In 29 Cyc. 486, it is stated that "As to the principle upon which those who deal in unwholesome food are liable to persons injured thereby, the authorities do not seem to be altogether harmonious." The footnotes refer to *Salmon* v. *Libby*, 114 Ill. App. 258, and to *Craft* v. *Parker*, 98 Mich. 248, and to *Van Bracklin* v. *Fonda*, 7 Am. Dec. 339. These cases uphold the idea that the wholesaler of unwholesome food is liable to the ultimate consumer. Reference is made to *Watson* v. *Augusta Brewing Co.*, 124 Ga. 123, 110 Am. St. Rep. 157, 1 L. R. A. (N. S.) 1178, which case holds the manufacturer of a bottled beverage liable, and which is opposed to the holding in *Salmon* v. *Libby, supra.*

In *O'Neill* v. *James*, 138 Mich. 567, 110 Am. St. Rep. 321, it was held that where a bottler of champaign cider sells it without knowledge that the bottles are charged improperly, he is not liable to the buyer's employee, who loses an eye through the explosion of one of the bottles. See *Weizer* v. *Holzman*, 33 Wash. 87, 99 Am. St. Rep. 932.

We accordingly, as the second reason herein above-named, insist that there was no such privity of relationship between the company and appellee as will entitle the appellee to recover in law.

We object to the instructions given in favor of appellee. The first instruction as shown on page 88 says in effect that if the jury believe that the beverage was bottled by defendant and placed on the market for sale while

106 Miss. 55

containing a dead rat, the plaintiff was made sick by drinking, then the verdict should be for the plaintiff. Our objection to this instruction is that it leaves out of consideration the fact that the plaintiff should have exercised proper care at the time when drinking. Certainly some obligation and requirement of prudence must rest upon the plaintiff in a case like this.

There is no limitation in instruction to show that plaintiff himself should have exercised reasonable care and caution. Suppose that in this case the plaintiff knowingly bought the stuff and drank it, and so was made sick thereby, should there be a recovery? Suppose that the plaintiff wilfully bought the concoction and got sick as a result, should the jury award the verdict for the plaintiff?

*Lamar F. Easterling,* for appellee.

We contend that, inasmuch as the appellee, who is a manufacturer and dispenser of a proprietory beverage or drink, who advertises his said beverage as being a harmless, delicious and refreshing drink to the public, and places the said bottled beverage upon the market for consumption by the public, that there is an implied warranty that the beverage so bottled and sold conforms to the nature of the advertisement and purposes for which it is bottled, and that any customer or consumer has a right to rely upon the fact that said beverage is harmless and contains no foreign or deleterious substance, and that the same was properly prepared and properly bottled for consumption. It is not for appellee to show the manner in which the deleterious or foreign substance got into the bottle that he purchased. The very fact that the mouse did get into the bottle and was bottled in coca cola and was sold and placed upon the market for consumption by the public, is sufficient proof that the appellant company was negligent, and that it did not take the proper care and caution in the bottling and dispensing of

its beverage. Can it be urged with any show of reason-
ing that a manufacturer who manufactures and bottles a
beverage or drink for the public consumption and places
the same upon the market can escape liability on the
ground that he did not actually sell it to the particular
individual who drank it.

We refer the court to the case of *Watson* v. *The Au-
gusta Brewing Co.*, reported in first L. R. A. (N. S.)
page 1178. This is a case squarely in a point we think
with the case before the court. In that case the declara-
tion shows that the Augusta Brewing Company sold to
a merchant in Thompson, Georgia, which the merchant
placed upon sale relying on the implied warranty of de-
fendant that said soda water was suitable for saleable
purposes as a refreshing and harmless drink. Some of
this soda water was, with the permission of the merchant
mentioned, taken from his stock by the plaintiff and
drunk from the bottle. While drinking said soda water
plaintiff swallowed three pieces of glass, or more per-
haps, without knowing it, and one piece lodged in plain-
tiff's throat. Suit was brought against the Brewing
Company to recover damages. A demurrer was inter-
posed to the declaration and sustained by the court, and
an appeal was taken to the supreme court of Georgia.
After stating the facts the court through Chandler, J.,
says: ''When a manufacturer makes, bottles and sells
to the retail trade, to be again sold to the general public,
a beverage represented to be refreshing and harmless,
he is under a legal duty to see to it that, in the process
of bottling, no foreign substance shall be mixed with the
beverage, which, if taken into the human stomach, will
be injurious. The case of *Woodward* v. *Miller,* 119 Ga.
618, 64 L. R. A. 932, 100 Am. St. Rep. 188, 46 S. E. 847,
is hardly in point; for in that case the manufacturer
knew of the defect, and fraudulently concealed it from
the purchaser. *Blood Balm Co.* v. *Cooper,* 83 Ga. 457,
5 L. R. A. 612, 20 Am. St. Rep. 324, 10 S. E. 118, while

differing somewhat as to its facts, furnishes strong reasoning to support the principle announced. The composition of patent or proprietary medicines is usually shrouded in mystery, and it is generally understood that many such remedies contain ingredients which, if taken in sufficient quantities, will produce injurious results upon the person taking them. If, then one who buys a patent medicine may rely upon the obligation of the manufacturer not to place therein ingredients which, if taken in prescribed doses, will injure his health, certainly the purchaser of an alleged harmless and refreshing beverage should have the right to rest secure in the assumption that he will not be fed on broken glass. It does not matter that the plaintiff in the present case did not buy the soda water from the defendant, or that there was no privity of relationship between them. The duty not negligently to injure is due by the manufacturer, in a case of the particular character of the one under consideration, not merely to the dealer to whom he sells his product, but to the general public for whom his wares are intended. On this subject, see also *Blood Balm Co.* v. *Cooper, supra.*"

We think that the foregoing statement of the law is applicable to the facts of this case, and covers the case now before the court.

Argued orally by *Chalmers Alexander,* for appellant, and *Lamar F. Easterling,* for appellee.

REED, J., delivered the opinion of the court.

A "sma' mousie" caused the trouble in this case. The "wee, sleekit, cow'rin,' tim'rous beastie" drowned in a bottle of coca-cola. How it happened is not told.

There is evidence for appellant that its system for cleansing and filling bottles is complete, and that there is watchfulness to prevent the introduction of foreign substances. Nevertheless the little creature was in the

bottle. It had been there long enough to be swollen and undergoing decomposition when the bottle was purchased from the grocer and opened by appellee. Its presence in the bottle was not discovered until appellee had taken several swallows. An odor led to the discovery. Further events need not be detailed. Appellee says he got sick. Suffice it to say he did not get joy from the anticipated refreshing drink. He was in the frame of mind to approve the poet's words:

> "The best-laid schemes o' mice an' men
>     Gang aft aglay
> An' lea'e us nought but grief an' pain,
>     For promis'd joy!"

The record discloses sufficient evidence to sustain the jury's verdict for appellee. There is no error for reversal. Appellant company bottled the coca-cola for the retail trade to be sold to the general public as a beverage refreshing and harmless. The bottle in this case was purchased by the grocer from appellant.

We find the law pertinent to this case clearly stated by Judge CHANDLER in the case of *Watson* v. *Augusta Brewing Company*, 124 Ga. 121, 52 S. E. 152, 1 L. R. A. (N. S.) 1178, 110 Am. St. Rep. 157, as follows: "When a manufacturer makes, bottles, and sells to the retail trade, to be again sold to the general public, a beverage represented to be refreshing and harmless, he is under a legal duty to see to it that in the process of bottling no foreign substance shall be mixed with the beverage, which, if taken into the human stomach, will be injurious." In that case it is further held that this duty the bottler owes to the general public for whom his drinks are intended as well as to the retailer to whom he sells.

*Affirmed.*