RAINWATER *v.* HATTIESBURG COCA-COLA BOTTLING CO.

[95 South. 444. No. 22776.]

FOOD. *Manufacture or bottler of unwholesome beverage liable, although purchased of middleman.*

A manufacturer or bottler of beverages impliedly warrants that the beverages manufactured or bottled by him are wholesome and fit for human consumption, and is liable to a consumer for damages suffered by reason of drinking an unwholesome beverage manufactured or bottled by him, although it was purchased by the consumer from a middleman, and not direct from the manufacturer or bottler.

APPEAL from circuit court of Forrest county.

HON. R. S. HALL, Judge.

Action by Robert J. Rainwater against the Hattiesburg Coca-Cola Bottling Company. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

*W. A. Shipman,* for appellant.

We call the attention of the court to the fact that the action sounds in tort. The plaintiff did not stand in privity of contract with the defendant and it is conceded that the general rule of law is that a manufacturer is not liable to third parties who have no contractual relations with him, for the manufacture or sale of the articles. To this rule, however, there are well recognized exceptions, among which is the case of the manufacture and sale of soft drinks, into which the case at bar falls. The declaration states a cause *ex delicto,* alleging the negligence of the defendant "in failing to exercise reasonable care and caution to prevent the entrance into the said beverage in said bottle contained, of the poisonous, filthy and disgusting insects and matter aforesaid. There is no hint in the declaration of a warranty by implication of law, although under a well-settled rule of law, the cause might properly have been predicated upon this proposition, and under the

rule and decision of this court the plaintiff could as well have maintained his suit *ex contractu* as *ex delicto. Snow* v. *Schomacker Mfg. Co.,* 69 Ala. 111; *Kennebrew* v. *So. Auto El. Co.,* 106 Ala. 380, 17 So. 545; *Kellogg Bridge & Co.* v. *Hamilton,* 110 U. S. 108, 3 S. Ct. 537; *Jackson Coca-Cola Bottling Co.* v. *Chapman,* 106 Miss. 864, 64 So. 791.

The question then arises: What is the reasonable care and caution which the defendant is bound to observe in the manufacture, preparation and bottling of a soft drink, designed for and represented as a harmless and healthful beverage? What might be reasonable care in the manufacture of house paint would fall far short of the requirements, for reasonable care in the manufacture, preparation and packing of foods, drugs, condiments and beverages. Therefore, the word reasonable, as used in the books is relative and elastic in its meaning.

The real ground of liability of the seller to an ultimate consumer is, more properly speaking, a duty one owes to the public not to put out articles to be sold upon the market for use injurious in their nature, of which the general public have not means of inspection to protect themselves. The foundation of liability here, as elsewhere, is a superior knowledge of the manufacturer or seller as to the peril embodied in the article sold. 24 R. C. L. 514, supported by numerous authorities.

The exception here referred to, that is, the manufacture and sale of beverages, like all the others, grew out of the necessity of the situation, declaring a wise public policy for the protection of human life and health, and placed upon the manufacturer of drugs, foods, and beverages, a high degree of care, because of their superior knowledge of the articles manufactured, and the necessary reliance which the public must place upon them. As expressed in *Mazetti* v. *Armour & Co.,* 75 Wash. 628, 48 L. R. A. (N. S.) 223, that such manufacturers "having an opportunity to investigate, and thereby know the quality of their merchandise" are charged with a high degree of responsibility, and in manufacturing and placing on the market for con-

sumption by the general public, the law requires of them the exercise of a high degree of care to determine that no foreign and deleterious substances shall enter into the article, and that the public shall not be deceived thereby. See: *Jones* v. *Gulf States Steel Co.*, 88 So. 21 (Ala.); *Watson* v. *Augusta Brewing Co.*, 124 Ga. 121, 1 L. R. A. (N. S.) 1178; *Cherro-Cola Bot. Co.* v. *Weeks*, 80 So. 734 (Ala.); *Jackson Coca-Cola Co.* v. *Chapman*, 106 Miss. 864, 64 So. 791; *Pillars* v. *Tobacco Co.*, 117 Miss. 490, 78 So. 364.

One of the early and leading cases declaring the exceptions to the general rule is that of *Thomas* v. *Winchester*, 6 N. Y. 397, 57 Am. Dec. 455, which holds that a manufacturer of drugs, who by himself or his agent sells poisonous drugs, represented to be harmless, is liable in damages to a person who, relying on the representation of the manufacturer as to the nature of the article, takes such drug as a medicine, on the ground of a breach of public duty, whether the person injured as an immediate customer of the manufacturer or a remote consumer.

This case of *Thomas* v. *Winchester*, has been cited in many later cases and generally with approval, and the exception therein declared has been broadened to include beverages, as well as drugs; and in our own state to embrace tobacco which is taken into the mouth for chewing. *Bottling Co.* v. *Chapman*, 106 Miss. 864; *Pillars* v. *Tobacco Co.*, 117 Miss. 490.

In the *Chapman case, supra,* this court, by Justice Reed, says: "There is evidence for appellant that its system for cleansing and filling bottles is complete and that there is watchfulness to prevent the introduction of foreign substances. Nevertheless the little creature was in the bottle. . . .

"We find the law pertinent to this clearly stated by Judge Candler in the case of *Watson* v. *Brewing Co.*, 124 Ga. 121, 52 S. E. 152, 1 L. R. A. (N. S.) 1178, 110 Am. St. 157, as follows: 'When a manufacturer makes bottles and sells to the retail trade, to be again sold to the general public, a beverage represented to be refreshing and

harmless, he is under a legal duty to see to it that in the process of bottling, no foreign substance shall be mixed with the beverage, which, if taken into the human stomach will be injurious."

In this case, it is decided that the reasonable care which the bottler owes to the general public is that high degree of care to see to it that no foreign substance shall enter into the receptacle and become mixed with the beverage. No system, however complete, no amount of watchfulness, however constant, can absolve the manufacturer from liability, if the beverage is mixed with injurious foreign substances. The same high degree of care is stated in the *Pillars case, supra;* that is to say, such a high degree of care and caution as will utterly prevent any noxious substances from becoming bottled and mixed with an otherwise harmless beverage.

Applying this rule of law to the evidence in the instant case we find that defendant's only attempted defense is that it was a very complete system of inspection in connection with its operations, which however, has on several occasions failed to prevent the bottling and mixing with its products of foreign substances, such as flies, etc.

*Carl Marshal,* for appellee.

We feel that little argument is warranted in support of the judgment appealed from and here attacked by the appellant. Digesting appellant's brief, we are compelled to the conviction that he is confused in his interpretation of the opinions of this court in the cases of *Jackson Coca-Cola Bottling Company* v. *Chapman,* 106 Miss. 864, 64 So. 791; *Pillars* v. *R. J. Reynolds Tobacco Company,* 117 Miss. 490, 78 So. 356.

His inaccurate construction of these decisions gives rise to the erroneous positions assumed by him here on both phases of the appeal. (a) As to the correctness of submitting to the jury for determination initially and primarily the issue of fact whether the bottle of "orange crush" was

sent out from the appellee's plant with the outrageous substances in it averred by the appellant. In the *Chapman case, supra* (decided in 1914), the supreme court approved the submission of all issues to the jury, and affirmed the judgment of the trial court upon the express ground that: "The record discloses sufficient evidence to sustain the jury's verdict." Had the verdict been for the defendant, as in this case, a judgment for the defendant bottling company likewise would have been affirmed.

In the *Reynolds Tobacco Company Case, supra* (decided in 1918), a peremptory instruction was granted by the court below in favor of the manufacturer. This court reversed the judgment of the lower court because the peremptory instruction was given, and the issues not submitted to the jury, as they should have been. Since the court was passing upon the propriety of a peremptory instruction for the defendant, every fact supported by evidence most favorable to the plaintiff's cause had to be assumed. Accordingly, this court in that case treated with the appeal upon the assumption that the human toe was in the plug of tobacco; the plaintiff having so testified. And in the Chapman case, there being evidence to support it, the verdict of the jury in favor of the plaintiff established the facts on appeal, and cut off inquiry as to their existence.

Obviously overlooking this common circumstance of the two authorities, the appellant is misled into the belief that their holding is that a plaintiff's testimony to the effect that a defective bottled beverage was sold to, and sickened him, obligates the trial court to eliminate that question from the jury's consideration, and assume it to be true, whenever the plaintiff lays a scene in which the manufacturer, or bottler, may have no representative present to observe the plaintiff's actions and contradict his testimony upon the witness stand. But the credibility of the witness is for the jury to determine; and this is especially true where, as in the case at bar, the plaintiff's testimony, when taken with the whole evidence, is unreasonable to

the point of absurdity, and is contradicted upon material points by his own witnesses; and where reasonable men may draw different logical inferences from his testimony when taken with the whole evidence.

It is respectfully submitted that the verdict of the jury to the effect that the bottle in question did not leave the appellee's plant with the alleged insects in it was based on rational deductions of reasonable men from testimony that was wholly insufficient and unsatisfactory to convince the jury to the contrary; and that the judgment of the learned court below, on this verdict, should be sustained.

(b) As to the appellant's contention that, assuming, contrary to the jury's verdict, that the bottle containing the alleged insects was produced from the appellee's plant, the appellee was liable to the appellant as an insurer. The language of the supreme court of Georgia in the opinion in *Watson* v. *Augusta Brewing Company,* quoted in the opinion of this court in the *Chapman case, supra,* is a loose announcement of the law; but it in nowise can be an authority to alter the criterion of liability *vel non* in the instant case, which was due care or not in the appellee's system of bottling the soft drinks and beverages. The appellant's action, as the court will observe from his declaration spread upon pages 2-5, of the record, is purely *ex delicto;* the action being pitched entirely upon alleged negligence of the appellee. In whatever form the appellant might have brought his action originally, he is now confined to the theory relied upon by him, and will not be permitted to recover upon another. He cannot sue in tort for alleged negligence, and recover *ex contractu* upon an alleged breach of warranty. *Richards* v. *City Lumber Company,* 101 Miss. 678, 57 So. 977. A plaintiff must recover, if at all, on the case made by his pleadings.

In the case at bar, the evidence overwhelmingly showed the exercise of the highest degree of caution on the part of the appellee to prevent the output of bottles containing foreign substances. The jury inspected every part of the

plant in operation. In addition to this, the municipal health officer of Hattiesburg who repeatedly and frequently inspected the plant, testified in the most complimentary way about its cleanliness and efficiency. In view of this evidence, it could scarcely be expected that the jury would find that great care had not been exercised by the appellee. There was ample and overwhelming evidence to support the jury's verdict upon the facts, acquitting the defendant of blame.

As it does not affirmatively appear, from the whole record, that the judgment appealed from has resulted in a miscarriage of justice, we do not feel warranted in trespassing upon the court's patience further, by following the appellant into a discussion of the instructions granted. Taken as a whole, the jury were given the law very liberally for the appellant. For the appellant, the jury were charged that the appellant "is under the legal duty to see to it that in the process of bottling, no foreign or extraneous substance shall be mixed with the beverage, which if taken into the human stomach and system will be injurious." The jury were further charged by the court, at the request of the appellant, that if the jury believed from the evidence that the appellee sold the bottle to the retailer with the insects in it, and the appellant was made sick by drinking the liquid from the bottle, the jury should find for the appellant and assess his damages. The jury did not believe it, and, we submit, it is difficult to see how the jury could have believed it, in the face of the evidence and the view of the plant in operation that the jury had. If any error is embodied in the appellee's instructions, it is clearly cured by the liberal charges granted the appellant. Taken with the whole evidence, and the instructions granted the appellant, any error in the appellee's charges was necessarily harmless.

We do not conceive that the appellant can be serious in his criticism of the instruction granted the appellee to the effect that the jury, should it find for the appellant, must allow the appellant only actual damages, and not allow

the plaintiff damages for attorney's fees, court costs, or expenses in attending the trial. Is not this the law? And if the appellant in his third instruction can have the jury told what elements should legally be embraced in their assessment of actual damages, we are at a loss to perceive why we should be denied the right to ask for, and receive an instruction telling the jury what elements cannot legally be embraced within its finding of actual damages.

Upon the whole record in the case, it is earnestly submitted that the judgment from which this appeal is prosecuted is correct, embodies substantial justice to the appellant, and should be affirmed.

SMITH, C. J., delivered the opinion of the court.

The appellee is a manufacturing company engaged in bottling soft drinks, among which is one called "orange crush." The appellant's evidence is to the effect that he purchased a bottle of orange crush, bottled by the appellee from a retail dealer, drank it, and then for the first time discovered that it contained several dead flies and other insects, because of which he was made sick, resulting in damage to him. There was a verdict and judgment for the appellee, defendant in the court below.

At the request of the appellant, the court below requested the jury to find for him in the event he was made sick by drinking a bottle of the appellee's orange crush, into which the dead flies and other insects were allowed to get at the appellee's factory. At the request of the appellee, the jury were instructed to find for the appellee, unless it appeared from the evidence that it "was negligent or careless in permitting the flies to be in the bottle, if they were in it," and the granting of this instruction is assigned by the appellant for error.

"Although differing in their reasoning, it is generally agreed by the authorities that a manufacturer, packer, or bottler of foods or beverages is directly liable to a consumer for an injury caused by the unwholesomeness or the

unfitness of such articles, although purchased from a dealer or middleman and not from such manufacturer, bottler, or packer, . . . In some of these decisions the doctrine of implied warranty has been assigned as a ground for such liability; but in others liability is based upon the ground of negligence, the applicability of the rule of implied warranty being denied." 26 Corpus Juris, p. 785.

The basis of the appellee's liability in the instruction granted by the court below to the appellant is an implied warranty, and the basis of its liability in the instruction granted to the appellee is negligence. Both of these instructions cannot be right. The case that must rule here is *Jackson Coca-Cola Bottling Co.* v. *Chapman,* 106 Miss. 864, 64 So. 791. The appellee there, who was the plaintiff in the court below, recovered from the appellant damages alleged to have been caused him by drinking a beverage bottled by the appellant and purchased by the appellee from a retail dealer. One of the appellant's complaints was that the court below charged the jury, at the request of the appellee, that if they believed from the evidence—"that the defendant company placed upon the market 'Coca-Cola' for sale, and that plaintiff, Harry Chapman, purchased a bottle from G. H. Cameron, a retail merchant, and that said bottle of Coca-Cola contained in it a dead and decomposed mouse, and that said mouse was bottled up in said bottle by said defendant company, and that plaintiff took several drinks therefrom before discovering the presence of the mouse and that by reason thereof plaintiff was rendered sick and nauseated and damaged thereby," etc. .

In affirming the case and thereby approving this instruction, the court quoted with approval from the opinion in *Watson* v. *Augusta Brewing Co.,* 124 Ga. 121, 52 S. E. 152, 1 L. R. A. (N. S.) 1178, 110 Am. St. Rep. 157, that a bottling company—"is under a legal duty to see to it that in the process of bottling no foreign substance shall be mixed with the beverage which, if taken into the human stomach, will be injurious."

It appears therefore that a bottler's liability to a consumer was there grounded on an implied warranty that the beverages bottled by him are wholesome and fit for human consumption. See, also, *Pillars* v. *Reynolds Tobacco Co.,* 117 Miss. 490, 78 So. 365.

The cases dealing with this question were reviewed by the supreme court of Iowa in *Davis* v. *Van Camp Packing Co.,* 189 Iowa, 775, 176 N. W. 382, 17 A. L. R. 649, and will be found collated in case notes in 19 L. R. A. (N. S.) 923, 48 L. R. A. (N. S.) 213, and L. R. A. 1916B, 879.

Among the cases holding that the ground of liability is that of an implied warranty are *Catani* v. *Swift,* 251 Pa. 52, 95 Atl. 931, L. R. A. 1917B, 1272, *Parks* v. *Yost Pie Co.,* 93 Kan. 334, 144 Pac. 202, L. R. A. 1915C, 179, *Mazetti* v. *Armour,* 75 Wash. 622, 135 Pac. 633, 48 L. R. A. (N. S. 213, Ann. Cas. 1915C, 140, *Davis* v. *Van Camp Packing Co.,* 189 Iowa, 775, 176 N. W. 382, 17 A. L. R. 649.

It follows from the foregoing views that the court below erred in instructing the jury to find for the appellee, unless they believed from the evidence that it "was negligent or careless in permitting the flies to be in the bottle."

*Reversed and remanded.*