COCA-COLA BOTTLING WORKS *v.* LYONS.*

(Division B.    Jan. 31, 1927.    Suggestion of Error Overruled Feb. 28, 1927.)

[111 So. 305.    No. 26133.]

1. SALES. *Manufacturer impliedly warrants that bottled goods sealed and placed on market for public use are pure and wholesome.*

   Manufacturer, sealing and placing bottled goods on market for the public, impliedly warrants that bottled beverages are pure and wholesome, and is liable for injuries resulting from broken glass in bottle, whether guilty of negligence or not.

2. SALES. *Consumer of bottled beverage purchased by friend may recover against manufacturer for injuries because of broken glass therein.*

   Where Coca-Cola was ordered and paid for by plaintiff's friend, bottled beverage consumed by plaintiff was a gift and carried with it title authorizing recovery for injuries from broken glass therein on manufacturer's implied warranty relative to purity of drink.

3. SALES. *Instruction authorizing recovery against manufacturer for injuries from glass in bottled beverage held not erroneous under evidence.*

   In action against manufacturer for personal injuries resulting from drinking Coca-Cola containing broken glass, instruction authorizing recovery, if defendant manufactured Coca-Cola and, if bottle purchased by plaintiff contained pieces of glass, *held* not erroneous, as authorizing recovery regardless of whether glass got in bottle after it left factory, since undisputed testimony showed glass must have been in bottle at such time.

4. SALES. *Manufacturer is. liable for injuries from broken glass in bottle, though method of bottling is complete and perfect.*

   If there was broken glass in bottle of Coca-Cola at time it left factory, manufacturer is liable for injuries resulting therefrom, even though method of bottling was complete and perfect.

5. SALES. *Testimony, in action against manufacturer for injuries from broken glass in bottled beverage, relative to sanitary condition of plant, held properly refused.*

In action against manufacturer for injuries resulting from drinking portion of bottle of Coca-Cola containing broken glass, testimony relative to sanitary condition of bottling plant *held* properly refused, since sanitary condition might be perfect and yet method of bottling improper or defective.

6.  SALES.   *Two thousand and five hundred dollars for pain and internal trouble from drinking Coca-Cola containing broken glass held, under evidence, not excessive.*

Two thousand and five hundred dollars for injuries from drinking portion of bottle of Coca-Cola containing broken glass, resulting in pain and internal trouble, *held,* under evidence, not excessive.

---

*Corpus Juris-Cyc. References: Damages, 17CJ, p. 1100, n. 20; Food, 26CJ, p. 784, n. 79 New; p. 785 n. 86, 87, 88, 89; p. 788, n. 42; p. 789, n. 56, 63. As to liability of manufacturer of defective article sold as beverage for injury to consumer, see annotation in 19 L. R. A. (N. S.), 932; L. R. A. 1916B, 881; 17 A. L. R. 696; 24 R. C. L. 160; 4 R. C. L. Supp. 1530. On excessiveness of verdicts in actions for personal injuries other than death, see annotation in L. R. A. 1915F, 30; 8 R. C. L. 674; 2 R. C. L. Supp. 638.

APPEAL from circuit court of Coahoma county, Second district.

HON. WM. A. ALCORN, JR., Judge.

Action by Mrs. Fred Lyons against the Coca-Cola Bottling Works. Judgment for plaintiff, and defendant appeals. Affirmed.

*John W.* and *Charles W. Crisler,* for appellant.

I.   An implied warranty is contractual in nature and inures only to the benefit of the parties to the contract. This is universal law.  Being recognized as such by all courts, we will refrain from argument or citation of authority in its support.

II.   Non-purchasers do not receive the benefit of implied warranty, and must rely upon negligence to sustain their action.  26 C. J. 785, see note 87; *Gearing* v. *Berkson,* 223 Mass. 257, 111 N. E. 785, L. R. A. 1916D 1006;

*Bishop* v. *Weber,* 139 Mass. 411, 1 N. E. 154, 52 Am. Rep. 715; *Ketterer* v. *Armour & Co.,* 247 Fed. 921, L. R. A. 1918D 798.

III.   Care in bottling may be shown in evidence either to conclusively refute negligence, or to create a question for the jury as to whether the bottler was negligent. *Liggett & Myers Tob. Co.* v. *Cannon,* 132 Tenn. 419, L. R. A. 1916A 940, 178 S. W. 1009; *Crocker* v. *Baltimore Dairy Lunch Co.,* 214 Mass. 177, 100 N. E. 1078, Ann. Cas. 1914B 884; *Pantaze* v. *West,* 7 Ala. App. 599, 61 So. 42.

IV.   The mere finding of a foreign substance in a bottled beverage is not sufficient to make out a *prima-facie* case of negligence; and the bottling of a foreign substance in a beverage is not in itself sufficient to establish negligence. *Sheffer* v. *Willoughby,* 163 Ill. 518, 34 L. R. A. 464, 54 A. S. R. 483, 45 N. E. 253; *Crocker* v. *Baltimore Dairy Lunch Co.,* 214 Mass. 177, Ann. Cas. 1914B 884, 100 N. E. 1078; *Rainwater* v. *Coca Cola Co.,* 131 Miss. 315, 95 So. 444.

V.   A plaintiff must recover, if at all, upon its pleadings; hence, a plaintiff cannot recover *ex delicto* in a suit based on an alleged right *ex contractu* for breach of warranty.   This rule, like our first proposition of law, needs no argument or citation of authority; hence, we will content ourselves with the mere statement of the principle.

*F. H. Montgomery,* for appellee.

I.   This is an action *ex contractu* based upon a breach of an implied warranty as to the fitness and suitableness of a bottle of Coca Cola for human consumption, manufactured by the defendant, and sold to a retail dealer, to be by him resold to the public.   That the suit was prop-

erly brought on contract can no longer be questioned in this state. *Jackson Coca Cola Bottling Co.* v. *Chapman,* 106 Miss. 864; *Pillars* v. *Reynolds Tobacco Co.,* 117 Miss. 490; *Rainwater* v. *Hattiesburg Coca Cola Bottling Co.,* 1331 Miss. 315; *Grapico Bottling Co.* v. *Ennis,* 140 Miss. 502, reannounces the doctrine of implied warranty running from a manufacturer to an ultimate consumer, who purchased of a middleman.

It is the contention of counsel for defendant that because the plaintiff did not actually pay for the drink, she was not the purchaser, and no warranty of quality existed in her favor from the manufacturer.

It appears that the plaintiff and her companion went to the retail store and ordered the drinks. The retailer delivered the drinks to them. Nothing was said as to who should pay for the drinks, as between the two purchasers. When the delivery was made to them, there was an implied obligation upon the part of both ladies, viewed from a strictly legal standpoint, to pay for their respective drinks the fair cash market price thereof. If neither had paid at the time, each would undoubtedly have been liable for the goods actually accepted by them respectively and consumed by them. The obligation was implied upon each of the ladies to pay for her drink the usual market price.

The fact that Mrs. Jackson, the companion of plaintiff, voluntarily discharged plaintiff's legal obligation to pay for her drink, could not be construed so as to change the relation of seller and purchaser existing between her and the retailer.

This is the fundamental error in the position taken by counsel for the defendant. The payment by Mrs. Jackson for the drink bought by Mrs. Lyons was merely a voluntary discharge of Mrs. Lyons' implied obligation to pay for it, arising out of her contract of purchase, and not the contract of purchase. *State* v. *Austin* (Miss.), 23 So. 34, 35 Cyc. 25; 35 Cyc. 49.; *Porter* v. *Title G. & S. Co.,* 27 L. R. A. (N. S.) 111; *Town of Manitou* v. *First*

*Nat'l Bank,* 86 Pac. 75, 37 Col. 344; *Ketterer* v. *Armour & Co.,* 247 Fed. 921, L. R. A. 1918D 798, is not in point, because the action there was in tort.

In view of the express recommendation and warranty to the public, as admitted by the manager of defendant company, is there any reason to limit the warranty to the individual who actually buys the product and exclude others who become consumer and who do not sustain any contractual relation to the manufacturer? Common knowledge of current customs informs the court that the immediate purchasers of food products from the retailer, constitute a small per cent of the actual consumers of the product. This is well known to the manufacturer. No plausible reason can be assigned for denying the injured member of society the right to invoke the benefit of the warranty. *Mazetti* v. *Armour & Co.,* 135 Pac. 633, 48 L. R. A. (N. S.) 213; 6 Words and Phrases 5606; 3 Words and Phrases (2nd Series) 1217; *Johnson* v. *Stebbins-Thompson Realty Co.* (Mo.), 76 S. W. 1021; *Withes* v. *Wabash R. R. Co.* (Mo.), 99 S. W. 34; *Towle* v. *Suante* (Ill.), 92 N. E. 967.

The numerous authorities cited in Words and Phrases disclose that "privity" consists in a mutual or successive relationship to the same rights of property, and may arise by gift as well as by contract.

If the implied warranty in this case "runs with the sale and passes with the title," why would not the donee of a bottle of beverage who acquired the title to same of a purchaser of an intermediate retailer who stood in privity to the manufacturer, likewise stand in privity to the manufacturer? This appears to be the holding in *Grapico Bottling Co.* v. *Ennis, supra,* and such a holding is well founded in principle.

II.   Care or negligence of the defendant in manufacturing and bottling the beverage in question in this case was not an issue under the pleadings. *Rainwater* v. *Coca-Cola Bottling Co.,* 131 Miss. 315.

Since this court has adopted the rule that breach of implied warranty and not negligence is the proper basis for the action, decisions of foreign jurisdictions based on negligence, cited by appellant, cannot furnish authority in respect to the nature or quantity of proof necessary. Additional authorities in support of the theory of appellee are: *N. O., J. & G. N. R. R. Co.* v. *Hurst,* 36 Miss. 660-666; *Miss. Cent. R. R. Co.* v. *Coruth,* 51 Miss. 77; *N. & M. V. R. R. Co.* v. *Cobb,* 94 Miss. 561; *A. & V. R. R. Co.* v. *McGee,* 117 Miss. 370; *N. O. & N. E. R. R. Co.* v. *Jackson,* 140 Miss. 375.

Argued orally by *J W. Crisler,* for appellant, and *F. H. Montgomery,* for appellee.

Holden, P. J., delivered the opinion of the court.

The Coca-Cola Bottling Works appeals from a judgment for two thousand five hundred dollars recovered by the appellee, Mrs. Fred Lyons, as damages for personal injuries received by her on account of drinking a portion of a bottle of Coca-Cola which contained a quantity of broken glass.

We shall state only such of the facts as are necessary to an understanding of the decision of the case. The appellee, Mrs. Lyons, in company with her friend, Mrs. Jackson, drove in an automobile, to the Belen Drug Store, at Belen, in front of which they parked, and ordered drinks to be brought to them. The exact testimony on this particular point is that, "We drove up in front of the drug store, and ordered cokes." A clerk in the drug store brought two bottles of Coca-Cola to the ladies, which they proceeded to drink, and Mrs. Lyons swallowed a quantity of broken glass which was in the bottle of Coca-Cola she drank from.

The bottle of Coca-Cola in question in this case had been manufactured, bottled, sealed, and delivered to the drug store to be sold to the public in the retail trade.

The bottle was unsealed, or we may say uncapped, by the clerk in the drug store just before he delivered it to Mrs. Lyons. The above-stated testimony in the record is undisputed.

When the two ladies drove up and stopped in front of the drug store, Mrs. Jackson was the one who ordered the drinks, and she also paid for them; but the drinks were ordered for both of the ladies, and a bottle was delivered to each of them.

Mrs. Lyons suffered severe internal injuries on account of swallowing the broken glass in the Coca-Cola, and she testified that she suffered for many months from the effects of the glass in her stomach. There was about a tablespoonful of the broken glass in the bottle.

The recovery is based solely upon the theory that the Coca-Cola company was liable upon an implied warranty that the bottled drink was pure and wholesome, and that the fact that there was glass in the bottle when it was sealed and put upon the market for the public created liability for the injury to the one who drank it, regardless of whether the manufacturer was guilty of negligence or not. This rule is established in this state by the cases of *Coca-Cola Bottling Co.* v. *Chapman,* 106 Miss. 864, 64 So. 791; *Rainwater* v. *Coca-Cola Co.,* 131 Miss. 315, 95 So. 444; and *Grapico Bottling Works* v. *Ennis,* 140 Miss. 502, 106 So. 97, 44 A. L. R. 124.

This being a case, then, grounded upon the theory of the breach of an implied warranty, we may discard any question arising in the record with reference to the right to recover on account of the negligence of the bottler, and proceed to ascertain whether or not recovery upon the other theory, that is, the breach of an implied warranty, can be maintained in the case. In such a case as the one before us three things only are to be ascertained, namely: (1) Was the glass in the bottle when it left the factory and was offered to the public? (2) Did the consumer have title and rightful possession of the bottle?

(3) Did the consumer receive injury from drinking the Coca-Cola with the glass in it?

The main point presented for reversal of the judgment is that, since the right of recovery depends upon the breach of an implied warranty on the part of the manufacturer that the bottled goods were pure and wholesome, there can be no recovery in the case because there was no implied warranty of the purity of the drink for the reason that there was no contractual relation between the injured party, Mrs. Lyons, and the Coca-Cola company, or the retailer, Belen Drug Company.

It is contended that Mrs. Lyons had no contract with the clerk at the drug store who sold and delivered the Coca-Cola, for the reason that Mrs. Jackson, the lady friend with her, ordered and paid for the drinks for both of them. It is urged that, therefore, there was no contractual relation between Mrs. Lyons and the manufacturer of the Coca-Cola; that the bottle of Coca-Cola was not purchased by Mrs. Lyons, but was given to her by Mrs. Jackson; that, consequently, Mrs. Lyons cannot recover upon the theory of a breach of warranty; and that since she has made no effort to recover upon the theory of negligence the case must fail.

We have carefully considered the question, and it appears to be a new proposition in this state, so far as we are able to discover, and we are of opinion that the position of appellant is not maintainable, because, as we see it, the bottle of Coca-Cola which Mrs. Lyons drank was at least a gift to her by her friend, Mrs. Jackson, and since the gift carried with it the title, and the implied warranty runs with the title, Mrs. Lyons was the owner, and rightfully in possession thereof as one of the public when she drank the Coca-Cola, and that the manufacturer impliedly warranted the purity of the drink to such of the public as became the rightful possessor and owner of the Coca-Cola. Therefore, if the drink was injurious by reason of having glass in it, the bottling company was liable to the consumer.

There is another theory which might be offered to sustain our view just expressed, and that is that the purchase of the two bottles of Coca-Cola by Mrs. Lyons and Mrs. Jackson was a joint purchase; that is, that the sale by the drug clerk was to both of these ladies, regardless of which one ordered or paid for the drinks, the idea being that it would make no difference which one of the parties ordered the drinks, they were sold to both of the ladies, and it would not be material which one paid for them, because the contract of sale had already been made between the seller and the two purchasers, and the payment for the drinks was merely the settlement of the obligation or debt incurred by both. However, we feel that it would be better to rely upon our first view than upon the latter, because it seems that the first one is the soundest.

Complaint is made by the appellant that a certain instruction granted the appellee presented an erroneous theory to the jury, in that it told the jury that—

"If the defendant manufactured or bottled and placed upon the market the bottle of beverage called 'Coca-Cola' in question in this case, for human consumption, and that the plaintiff, Mrs. Lyons, purchased the said bottle of beverage in due course of trade, . . . and that the said bottle of Coca-Cola so purchased contained a quantity of small particles or pieces of glass therein, . . . and plaintiff was thereby damaged, it is your duty to return a verdict for the plaintiff."

The evil claimed to exist in this instruction is that it told the jury they should find for the plaintiff if the defendant manufactured and placed on the market the bottle of beverage in question, regardless of whether the glass got into the bottle after it left the factory, or regardless of whether the method of bottling employed by the manufacturer was such that the glass could not have gotten into the bottle until after it left the manufacturer.

We do not think the instruction was erroneous because it referred to the bottle of Coca-Cola in question, and, as

the testimony was undisputed that this bottle came from the manufacturer sealed, the glass must have been in the bottle before it left the factory. There is no conflict in the evidence on this point. Consequently the only thing left to the jury to decide was whether or not there was in fact glass in the bottle of Coca-Cola which Mrs. Lyons drank; and as the undisputed testimony shows that the glass was in the bottle of Coca-Cola which she drank, and that it damaged her, the instruction was correct, even though it may be considered equivalent to a peremptory instruction to find for the plaintiff. If the suit had been predicated on the theory of negligence instead of the theory of implied warranty, then our conclusion as to its correctness would be otherwise.

In the Chapman case, *supra,* the court said: "There is evidence for appellant that its system for cleansing and filling bottles is complete, and that there is watchfulness to prevent the introduction of foreign substances. Nevertheless, the little creature [mouse] was in the bottle."

So, if the broken glass was in the bottle when it left the factory, the manufacturer is liable for the damage done the consumer, even though the method of bottling was complete and perfect.

But the appellant contends that, when the manufacturer shows that the method of bottling is so efficient and perfect that a foreign substance cannot get into a bottle, then a question of fact arises for the determination of the jury as to whether or not the foreign substance got into the bottle after it left the factory, and that the court in the case before us erred in not permitting the appellant to submit that question to the jury.

The point is interesting, but we do not decide now whether such proof on the part of the manufacturer as to the perfect and efficient method of bottling would raise a question of fact as to whether or not the foreign substance got into the bottle before or after it was sealed and placed upon the market, because the record in this

case does not show any such perfect and complete method of bottling as would be sufficient to raise the question as contended for by the appellant; and this being true, we decline to decide it at this time. The Chapman case, *supra,* seems to be different in this regard.

This record shows that there were inspectors to inspect the bottles of Coca-Cola after they were sealed and before they left the plant to see that they contained no foreign substance. The Coca-Cola company failed to put these inspectors on the witness stand to show an inspection. The persons said to be employed to inspect were not experienced or competent, so far as the evidence shows.

The testimony offered, but refused by the court, to show the sanitary condition of the bottling plant, was properly refused, because the sanitary condition might have been all right and yet the method of bottling improper or defective to the extent of permitting foreign substances to get into the bottles of Coca-Cola before they were sealed and sent out for the use of the public.

We are not prepared to say that, if the Coca-Cola company had shown that the method of bottling was perfect, and that it was impossible for the foreign substance to get into the bottle while it was being filled and sealed, then the question of fact for the decision of the jury— whether the foreign substance got into the bottle after it left the factory—would not thus be raised; but, as we have said, the point is not presented by the record, because a perfect method of bottling was not there shown, for the reasons mentioned.

The other grounds for reversal contended for by appellant, with reference to the refusal of instructions and the adverse ruling of the court, and as to sustaining objection to certain testimony offered by the defendant, have been carefully considered, and we see no merit in the points presented. Taking the instructions as a whole, we do not think the jury was misled as to the law in the case.

Counsel for appellant contend that the verdict of two thousand five hundred dollars is excessive. We have reviewed the testimony on this phase of the case, and while the testimony of the plaintiff may have the marks of exaggeration or honest but unnecessary fear in it, yet it was positive, and the jury had the right to believe it. And if what the plaintiff testified to with regard to the extent of her injuries and suffering for nearly a year on account of the glass being in her stomach is true, we do not think two thousand five hundred dollars is an excessive amount to be allowed for the injury. It is true that probably she ought to have offered more expert medical testimony as to the extent of her injuries than she did; however, there are some injuries and internal troubles that the injured party is fully competent to testify about. In fact, the injured person here knows more about the pain she suffered from the character of injury involved than the attending physician could possibly know. The doctor, in such a case, generally knows only what the patient tells him, and he testifies as to the condition of the patient from what she has told him, and possibly some other slight corroborative symptoms.

The jury thought that two thousand five hundred dollars was a reasonable amount for the injuries received in this case and we see no good reason for disturbing the verdict.

The judgment of the lower court is affirmed.

*Affirmed.*