COCA COLA BOTTLING WORKS OF GREENWOOD *v.* SIMPSON.

(Division B. Nov. 3, 1930.)

[130 So. 479. No. 28868.]

Osborn & Witty, of Greenwood, for appellant.

Denman & Breland, of Sumner, and **S. L. Gwin** and **Means Johnston**, both of Greewood, for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellee brought this action against appellant in the circuit court of Le Flore county to recover of the latter damages for a personal injury suffered by the former as the result of drinking a bottle of poisoned Coca Cola, put on the market by appellant. There was a trial, resulting in a verdict and judgment in favor of appellee in the sum of two thousand five hundred dollars. From that judgment appellant prosecutes this appeal.

Appellee drank a bottle of Coca Cola sold by the Gilmer Grocery Company, of Tutwiler. The evidence on behalf of appellee tended to show that in the bottle there was a

decomposed mouse or parts of a rat, which appellee swallowed in drinking the Coca Cola before discovering its presence, resulting in ptomaine poisoning, from which appellee had not recovered at the time of the trial, which took place more than a year after he drank the contents of the bottle of Coca Cola.

The basis of appellee's action was that appellant, in bottling and putting the Coca Cola on the market for human consumption, impliedly warranted that it was fit for that purpose; and the bottle in question being unfit for human consumption, appellant thereby breached such implied warranty. Appellee sought to make a case under that principle, relying on the cases of Jackson Coca Cola Bottling Works v. Chapman, 106 Miss. 864, 64 So. 791; Rainwater v. Coca-Cola Co., 131 Miss. 315, 95 So. 444; Grapico Bottling Co. v. Ennis, 140 Miss. 502, 106 So. 97, 44 A. L. R. 124; and Coca-Cola Bottling Works v. Lyons, 145 Miss. 876, 111 So. 305.

It was held in those cases that the manufacturer of a drink put on the market for human consumption impliedly warranted that the drink was fit for that purpose; and if the drink was not fit for human consumption, there was a breach of the implied warranty, for which the manufacturer was liable to any person consuming such drink for the injury resulting therefrom.

The evidence showed without conflict that the bottle of Coca Cola which appellee drank was manufactured and put on the market for human consumption by appellant. The Gilmer Grocery Company, at Tutwiler, was one of appellant's customers. A day or two before appellee drank the bottle of Coca Cola in question, the appellant sold and delivered it to the Gilmer Grocery Company. The bottle which appellee drank came from appellant to the Gilmer Grocery Company capped in the usual way. The cap was removed in the appellee's presence immediately before he drank it. The evidence showed that the cap on the bottle was a Coca Cola cap,

Appellant showed by its evidence that in the manufacture of the Coca Cola great care was taken to prevent any foreign substance from getting into the bottles; but the evidence failed to show that it was impossible for a foreign substance to get into the bottles during the manufacturing process and escape notice.

Appellant assigns five grounds for the reversal of the judgment. We will consider them in the order presented and argued in appellant's brief, and in doing so will set out the controlling evidence pertinent to each contention.

1. Appellant contends that the verdict of the jury was contrary to the great weight of the evidence. There was no dispute in the evidence that the bottle of Coca Cola in question was manufactured and put on the market for human consumption by appellant, and that it contained a part of a decomposed mouse or rat, which appellee swallowed in drinking the Coca Cola, resulting in ptomaine poisoning, and causing nausea and suffering. Appellee testified that his stomach and bowels had been permanently injured from the poison. Four physicians testified as experts, on behalf of appellant; according to their evidence, there is usually a complete recovery in a few days from ptomaine poisoning. However, on cross-examination they admitted that there were exceptions to this rule; that in some cases persons died from ptomaine poison, and in other cases of violent attacks the patient would be so weakened, and his vitality lowered to such an extent, that he would be rendered susceptible to other diseases. Two physicians testified on behalf of appellee, Drs. Crawford and Yates, neither of whom had attended appellee in his illness. Appellee's case, as made by his own testimony, was put to them as a hypothesis. They both testified that in their opinion appellee's illness was caused by drinking the poisoned Coca Cola. Dr. Yates testified that the poison probably brought on gastritis. Although the evidence on behalf of appellant that appellee had suffered no permanent injury was more reasonable than the evidence to the contrary, nevertheless

the evidence made an issue for the jury, and not for the court. In other words, it cannot be said from the evidence that there was no substantial dispute as to whether appellee's injuries were merely temporary, from which he had recovered, or were permanent.

2. Dr. Biles was appellee's physician, and attended him during his illness. Appellee, while testifying as a witness in his own behalf, on cross-examination testified as follows:

"Q. Isn't it a fact that you were treated by Dr. Biles for pellagra? A. No, sir, I don't think so.

"Q. Dr. Biles is here? A. Yes, sir.

"Q. Are you willing for him to testify in this case? A. Yes, sir.

"Q. Perfectly willing? (No response.)"

Appellant offered Dr. Biles as a witness, on the theory that appellee had waived the privilege secured to him by section 3695 of the Code of 1906, section 7455 of Hemingway's Code of 1927, which provides that all communications made to a physician or surgeon by a patient under his charge, or by one seeking professional advice, are privileged, and such physician or surgeon shall not be required to disclose the same in any legal proceeding except at the instance of the patient. The appellee objected to Dr. Biles testifying, claiming the privilege given by the statute. Thereupon the appellee again went on the witness stand, and was informed by his counsel that any information obtained by Dr. Biles while treating him for his illness was privileged, and was asked if he was then willing for Dr. Biles to testify. He stated that he was not; that he claimed the privilege; that when he stated on cross-examination that he was willing for Dr. Biles to testify he did not know of this privilege. Thereupon the court sustained appellee's objection to Dr. Biles' testifying. Appellant's contention is that when the privilege is once waived by the patient, the waiver cannot be revoked. That is probably true as a general rule, but a patient's informal expression of willingness that his

physician should testify, made on the witness stand before consulting his counsel, is not a waiver of the privilege. Answering questions on cross-examination as to the privilege does not constitute a waiver of the patient's right to claim the privilege. Such a statement is not voluntary in the sense that it constitutes a waiver of the privilege. Wigmore on Evidence, Sup. (2 Ed.) vol. 5, section 2388; Jones' Commentary on Evidence, vol. 4, p. 569, section 761 (779).

On the cross-examination of appellee there were brought out fragments of information obtained by him from Dr. Biles. Appellant argues that this constituted a waiver of the privilege. The same principle applies here as where the plaintiff is led into waiving the privilege on cross-examination. "Testimony of a plaintiff on cross-examination as to communications made to his physician is not voluntary in such sense as to constitute a waiver of his privilege." Jones Commentary on Evidence, vol. 4, p. 569, section 761 (799).

It is true, as contended by appellant, that where the plaintiff himself voluntarily testifies to fragmentary parts of communications by his physician, he surrenders the privilege. He cannot waive the privilege partially—he cannot remove the seal of secrecy from so much of the privileged communications as make for his advantage, and insist that it shall not be removed by so much as makes to the advantage of his adversary. Dabbs v. Richardson, 137 Miss. 789, 102 So. 769; Estes v. McGehee, 133 Miss. 174, 97 So. 530. But this is not that kind of a case; here the plaintiff did not voluntarily testify to fragmentary parts of the confidential communications; he was led into it by appellant on cross-examination.

3. Appellant introduced the witness Curtis for the purpose of proving that its machinery and methods, by means of which it bottled the Coca Cola, was modern and of the best, and not obsolete. On appellee's objection this evidence was excluded; and appellant argues that this action of the court was error. If error, it was without any

harm whatever, because appellant, by its evidence, absolutely demonstrated that its machinery and methods rendered it all but impossible for any foreign substance to get into the bottles during the process of manufacture. But the evidence failed to show that it was impossible. Negligence is not the basis of this action. Appellant is liable to appellee if the foreign substance got into the bottle of Coca Cola in question during the process of manufacture, regardless of the efficiency of appellant's machinery and methods used in its plant. As stated above in this opinion, the basis of this suit is breach of an implied warranty, and not negligence on the part of appellant.

4. Appellant presented to the court several instructions to the effect that, if the preponderance of the evidence failed to show that a foreign substance got into the bottle of Coca Cola during the "process of manufacture," then they should find a verdict for the appellant. The court added, after the word "manufacture" the following, "or sale." In other words, the court refused to give these instructions without that addition. This action of the court is argued and assigned as error by appellant.

In Coca-Cola Bottling Works v. Lyons, 145 Miss. 876, 111 So. 305, 307, the following instruction was under consideration: "If the defendant manufactured or bottled and placed upon the market the bottle of beverage called 'Coca-Cola' in question in this case, for human consumption, and that the plaintiff, Mrs. Lyons, purchased the said bottle of beverage in due course of trade . . . and that the said bottle of Coca-Cola so purchased contained a quantity of small particles or pieces of glass . . . and plaintiff was thereby damaged, it is your duty to return a verdict for the plaintiff." The correctness of this instruction was challenged on the ground that it informed the jury that they should find for the plaintiff if the defendant manufactured and placed on the market the Coca Cola, regardless of whether the glass got into the bottle during the process of bottling or after it left

the factory. The court said, in substance, in passing on the question, that the instruction was not erroneous, and gave as a reason therefor that the testimony was undisputed that the bottle came from the manufacturer sealed, and therefore the glass must have been in the bottle before it left the factory; that there was no conflict in the evidence on that point, and therefore the only issue for the jury to decide was whether or not there was, in fact, glass in the bottle when the plaintiff drank it.

The evidence in this case is undisputed that appellant manufactured the bottle of Coca Cola in question, and delivered it sealed to the Gilmer Grocery Company at Tutwiler; and that appellant's seal was still on the bottle when purchased by appellee's companion, and was removed in appellee's presence, and in the presence of others, immediately before appellee drank its contents.

If these instructions, so modified by the court, placed the burden on appellant of showing that the foreign substance did not get into the bottle of Coca Cola after it left appellant's plant, that burden was fully met by appellant; for, as stated above, the evidence showed without dispute that the bottle was capped during the process of manufacture, and that the same cap was on it a moment before appellant drank it. In other words, under the evidence, there was no way whatever for a foreign substance to get into the bottle after it left appellant's plant, except through the wrongful act of some third person, which will not be presumed.

5. Appellant contends that the verdict was excessive. There is no merit in this contention. Coca-Cola Works v. Lyons, supra.

Affirmed.