KROGER GROCERY CO. *v.* LEWELLING *et al.*

(Division B. Jan. 30, 1933. Suggestion of Error Overruled Feb. 27, 1933.)

[145 So. 726. No. 30301.]

Caldwell & Caldwell, of Charleston, and Bates, Shea & Frazer, of Memphis, Tenn., for appellant.

**Jas. Stone & Sons**, of Oxford, for appellee.

78

Argued orally by **J. H. Caldwell** and **Ceylon B. Frazier,** for appellant.

**Griffith, J.,** delivered the opinion of the court.

Appellant is a retail dealer in groceries, including canned vegetables. Appellees purchased of appellant a can of tomatoes, the contents of which, upon being eaten by appellees, made them ill because of certain poisonous substances, which were later and upon a more particular examination found to have been embedded in the contents of said can. Appellant had purchased the can in question along with a large number of like cans from a reputable packer of tomatoes. In fact, appellant had dealt with the said packer for eighteen years, and had purchased from this particular packer more than 7,000

cases of tomatoes of 24 cans to the case, and the can here involved was the only one throughout these years about which any complaint had ever been made. Appellees recovered judgment against the said retail dealer for the consequent injury upon the theory of an implied warranty, and appellant, having brought the case here, raises this sole question: Whether or not a retail dealer of canned food, or food sealed in containers, in the original package, for immediate human consumption, and which the dealer has purchased from a reliable packer, and without negligence, and without any reason to suspect that as to the can or package sold there is anything wrong, is to be held liable to the purchaser upon an implied warranty of fitness and purity.

It is well settled that there is no implied warranty of soundness under the laws of this state in the sale of animal foods. Royal Feed & Milling Co. v. Thorn, 142 Miss. 92, 93, 99, 107 So. 282, and cases there cited. It is also well settled that the manufacturer or bottler or packer of foods or beverages for immediate human consumption is bound by an implied warranty that his said products are wholesome and fit for such consumption, and that this warranty runs to the retail purchaser as though the consumer had purchased directly from the manufacturer or packer. Rainwater v. Hattiesburg Coca-Cola Bottling Co., 131 Miss. 315, 95 So. 444; Jackson Coca-Cola Bottling Co. v. Chapman, 106 Miss. 864, 865, 64 So. 791; Pillars v. R. J. Reynolds Tob. Co., 117 Miss. 490, 78 So. 365, 366; Grapico Bottling Co. v. Ennis, 140 Miss. 502, 106 So. 97, 44 A. L. R. 124; Jackson Coca-Cola Bottling Co. v. Grubbs, 143 Miss. 590, 108 So. 732; Coca-Cola Bottling Works v. Lyons, 145 Miss. 876, 111 So. 305; Coca-Cola Bottling Works of Greenwood v. Simpson, 158 Miss. 390, 130 So. 479; Curtiss Candy Co. v. Johnson (Miss.), 141 So. 762. In Pillars v. R. J. Reynolds Tobacco Co., supra, it is said that, to the general rule that the manufacturer is not liable to the ultimate

consumer, because of the absence of contractual relations between them, an exception has been made in cases of human foods in order to protect "the health of the people, and to insure a scrupulous care in the preparation of those articles of commerce so as to reduce to a minimum all danger to those using them."

But the question now here before us has not been expressly decided by this court. There was some general language used in Dulaney v. Jones & Rogers, 100 Miss. 835, 840, 57 So. 225, 226, which would indicate that the writer of the opinion in that case entertained the view that a retail dealer would be liable upon "an implied warranty of soundness in the case of the sale of provisions intended for human food," but that case was a suit for feedstuffs for animals. Hence what was said there was in the nature of discussion rather than decision, so far as concerns the present question. In the recent case, Green v. Brown, 159 Miss. 893, 897, 133 So. 153, 154, this court expressly pretermitted decision upon the question "whether . . . the dealer who retails to the consumer . . . food in cans in the original package, is liable upon an implied warranty in any event." It is true that in Pillars v. R. J. Reynolds Tobacco Co., supra, the distributor, as well as the manufacturer, was sued, and that the court, while holding the manufacturer liable, decided at the same time that there was no liability against the distributor, the opinion concluding upon that point that the distributor could not have suspected that poisonous matter was concealed in the food and was not negligent in not discovering the noxious contents thereof. But it is argued that this opinion proceeded upon the theory of negligence, whereas the point now being submitted is not in tort but in contract.

There is a significance, however, in the long line of cases in this state above cited, that not yet in a single one of them has any judgment been obtained against a retail dealer upon an implied warranty of soundness or fitness

of sealed or bottled foods or beverages, and we believe in only two of them has the retailer been sued, and these in joinder with the manufacturer. And these cases go back through a period of more than twenty years. This is indicative that in the general opinion of the bench and bar of this state there is no such liability as is insisted upon in the instant case, or else that it has been distinctly anticipated that actions against retail dealers would not be approved by affirmative responses by the jurors taken from the body of the good and lawful men of the county or counties. In either event in all this there is a persuasiveness, in respect to what our conclusion should now be, sufficient to tilt the scales were they otherwise evenly balanced upon the question now before us.

Turning to the decisions in other states, the division of opinion is well defined, and the arguments in support of the opposing views are advanced with strength. We cannot undertake to discuss in detail the numerous cases on the subject, or even to cite all of them here. The reporter will group them in his abstracts of the briefs. For convenient reference it may be said, however, that many of them, and all those that may be regarded as leading, are cited in the annotations 26 C. J., pp. 783, 784, 786, and 11 R. C. L., p. 1124. Among the leading cases relied on by appellee in support of the liability are Wiedeman v. Keller, 171 Ill. 93, 49 N. E. 210, Griffin v. James Butler Gro. Co., 108 N. J. Law, 92, 156 A. 536, and Ward v. Great Atlantic & Pacific Tea Co., 231 Mass. 90, 120 N. E. 225, 5 A. L. R. 242. The reasoning of these cases, and those of a similar import, is that the public safety demands that, in all sales of provisions for human consumption, there should be an implied warranty of the fitness and wholesomeness of said provisions, and that, although the retail dealer is not and cannot ordinarily be aware at the time of sale of the unwholesomeness of an article of food which is sealed in a can or other

container in the original package, yet the implied liability should be imposed on the retailer because he is in a better position to know and ascertain the reliability and responsibility of the manufacturer than is the retail purchaser, and because the retail dealer is better able to protect himself by way of recoupment against the manufacturer in view of the fact he knows and is in touch with the manufacturer; in other words, that responsibility to the retail purchaser should be placed upon the retail seller, since the dealer is the more often in a better position to protect himself against an original wrong of this kind than is the consumer.

On the other side, there are the cases, which uphold the view, to quote from Walters v. United Gro. Co., 51 Utah, 565, 172 P. 473, 474, L. R. A. 1918E, 519, "that retail dealers in selling canned goods for immediate use are not liable unless they can be charged with negligence in the purchase of such food, or with knowledge that the contents were unfit for human consumption. Those cases are determined upon the well-recognized fact that the dealer is not the manufacturer of the goods sold, and is not in a position to know the contents any better than the purchaser, neither the purchaser nor the vendor having had any opportunity to examine and know the condition of the goods contained in the cans sold." Or to quote from Bigelow v. Maine C. R. Co., 110 Me. 105, 85 A. 396, 398, 43 L. R. A. (N. S.) 627, 629: "It therefore appears that it was utterly impossible for the defendant to know anything more about the contents of this can of asparagus than did the plaintiff. With regard to this knowledge, or means of obtaining it, they were upon a perfectly equal footing. The plaintiff and the defendant necessarily understood the situation precisely alike. There could be no mistake. The plaintiff knew, or should be charged with knowledge, that the defendant could have no possible information concerning the contents of

that can which she did not have. We know of no rule of law which will imply a warranty of that of which it is impossible for a defendant to know by the exercise of any skill, knowledge, or investigation, however great. In other words, neither law nor reason require impossibilities.''

Such are the opposing views in the cases taken from other states. We therefore return to our own decisions and to the opinion in Pillars v. R. J. Reynolds Tobacco Co., supra, at page 499 of the report of that opinion in 117 Miss., 78 So. 365, 366, from which we have already quoted, and which is that the rule of liability in respect to food for human consumption is ''for the protection of the health of the people, and to insure a scrupulous care *in the preparation* of those articles of commerce so as to reduce to a minimum all danger to those using them.'' (Italics ours.) The liability is bottomed upon the protection of the public health; but that consideration can be conserved and at the same time the rule can be made to conform to what is equitable and just by placing the entire liability on the manufacturer or bottler or packer who prepares the food and seals it in containers, for there the canner has the opportunity and means, and therefore the duty, to insure that no noxious or injurious substances shall get into the cans—an opportunity and means which the retail dealer does not have, and for which he should not justly be charged.

We have concluded, therefore, that the question stated in the opening of this opinion should be answered in the negative, and, in consequence, that the judgment must be reversed and the case dismissed.

Reversed and dismissed.