LIVERPOOL AND LONDON AND GLOBE INSURANCE COMPANY *v.* VAN OS & SHUSTER.

1. **SUPREME COURT PRACTICE.** *Erroneous instruction granted both parties in a case.*

Where both the plaintiff and defendant in a case, in instructions granted by the court, invoke substantially the same rule of law for the guidance of the jury in determining their verdict, the fact that the rule so invoked is erroneous does not, in favor of either party, constitute a good ground for reversal of the judgment rendered.

2. **FIRE INSURANCE.** *Insured keeping gunpowder. Notice to agent whether notice to company.*

Notice by one about to take out a policy of fire insurance on his stock of merchandise to the agent taking the application, and whose business is simply " to solicit, receive, and submit applications, and to deliver policies and collect premiums," that the applicant keeps gunpowder in his stock, is not notice of such fact to the insurance company whose policy issued to such applicant prohibits him to keep gunpowder in the insured stock. *Insurance Companies* v. *Sorsby*, 60 Miss. 302, cited.

3. **SAME.** *Printed prohibition. Written qualifications. General description, followed by specific enumeration.*

Where a policy of insurance is issued on a stock " of general merchandise consisting of dry goods, clothing, and groceries," the language quoted being in writing, and by a printed condition such policy is made void if gunpowder be kept, in a suit on such contract of insurance, it is not a sufficient excuse for keeping gunpowder for the insured to show that gunpowder is included by usage and custom under the general words " general merchandise ;" but it must be shown that gunpowder is included in the specific words, "dry goods, clothing, and groceries," within the fair import of those words as used by the contracting parties.

4. **SAME.** *Evidence. Usage and custom.*

And in such case resort may be had to the usage and custom of merchants in the community to determine such fair import of the words so used.

APPEAL from the Circuit Court of Warren County.

HON. RALPH NORTH, Judge.

This action on a contract of insurance was brought by Van Os & Shuster against the London and Liverpool and Globe Insurance Company. The verdict and judgment were for the plaintiffs in the court below, and the defendant company appealed.

It appears that early in 1882 plaintiffs were merchants doing business in Delta, Louisiana. Desiring to insure their stock of goods, they wrote to Messrs. Kline & Fairchild, defendant's agents at Vicksburg, for terms, by whom they were referred to one Bradfield, who lived at Delta. The business of Bradfield was " to solicit, receive, and submit applications, and to deliver policies and collect premiums." Bradfield furnished Van Os a printed application, which the latter filled out, signed, and handed back to Bradfield, who forwarded it to Kline & Fairchild. Bradfield delivered to the plaintiffs a policy of insurance from Kline & Fairchild, general agents of defendant. In March, 1882, plaintiffs moved their goods to Vicksburg, cancelled their old policy, and received a new one, without making any new application. In January, 1883, the stock of goods insured was burned. It was contended by the defendant that the fire was caused by the act or procurement of the plaintiffs, and that the plaintiffs violated certain conditions in the policy by keeping gunpowder for sale.

The written part of the policy was as follows : " Van Os & Shuster. * * * $1,300. On his general stock of merchandise, consisting of dry goods, clothing, and groceries." A part of condition 1, printed in small type, is as follows : " Or if the assured shall keep gunpowder, fireworks, * * * * * * * without written permission in this policy, then, in every such case, this policy shall be void."

The plaintiffs admitted that they kept gunpowder, but showed that it was the custom of the merchants in the same line of business in that community so to keep it, as a part of a stock of general merchandise, and that Bradfield, the agent who received the first application, knew that they kept gunpowder.

The first instruction for the plaintiffs was as follows : " The jury

are instructed to find for the plaintiffs, unless they shall find that the defendant has satisfactorily established the defense based on the averment that plaintiffs had willfully burned or procured the burning of the storehouse."

The evidence as to the cause of the fire was conflicting. The second instruction given for the plaintiffs was as follows: "While the rule of evidence which requires the proof of a crime to be so clear as to exclude every reasonable doubt does not prevail in a civil case to the full extent of that language, yet in a civil case in which the perpetration of a grave crime is charged by one of the parties against the other, the law requires the proof to be clear and convincing, in order to sustain the charge, and if it leaves the mind in a state of serious and perplexing doubt as to the guilt or innocence of the party thus charged, it will not warrant a verdict against the party so charged."

The second instruction given for the defendant is as follows: "In order to justify the jury in finding a verdict for the defendant on the plea of fraudulent burning, it is not necessary that they should be convinced to the exclusion of a reasonable doubt that plaintiff, Shuster, burnt or assisted in burning the stock on which the plaintiffs claim insurance; but if the evidence be sufficient to satisfy their minds of this fact, they must find for the defendant, this not being a case in which the plaintiffs are on trial for crime, but one in which they are seeking to recover money to which they are not entitled if Shuster burned or assisted in burning the stock insured; but the jury are not authorized to find the existence of this fact except from a preponderance of evidence which they believe to be true, and which fully satisfies their minds."

*Shelton & Crutcher*, for the appellant.

1. We think the vice of the second instruction for the plaintiffs is manifest. It assumes that in this case the question to be tried by the jury is the guilt or innocence of plaintiffs of a crime, which it informs the jury is charged upon them by the defendant.

The instruction places before the jury a false issue, and clearly leads them to the conclusion that the main question for them to try is the guilt or innocence of the plaintiffs, and while informing

them that the strict rule prevailing in criminal trials does not prevail, because this is a civil suit, yet, notwithstanding that, the law requires the proof to be clear and convincing in order to *sustain the charge.* It cannot be questioned that the words "clear and convincing" express the same idea as beyond a reasonable doubt. But its chief vice consists in presenting to the jury a charge of crime to be tried by them as the main issue in the case. It enabled plaintiffs to escape the charge of fraud by taking refuge in that asylum of the guilty—reasonable doubt. *Kane* v. *Germania Ins. Co.,* 23 Am. R. 241–2 ; *Sloan* v. *Gilbert,* 23 Am. R. 708 ; *Jones* v. *Greaves.* 20 Am. R. 752 ; *Elliott* v. *Van Buren,* 20 Am. R. 668.

2. An insurance company cannot be estopped to plead violated conditions of the policy by reason of agreements made with the insured by an agent whose authority was limited to taking applications, delivering policies, and receiving premiums, for these reasons : First, such an agent has no power to bind the company by a contract outside of the policy ; second, the contract having been reduced to writing, parol testimony is not admissible to vary its terms, etc. *Ins. Co.* v. *Mowry,* 96 U. S. 544 ; *Slaitor* v. *Farmers' Ins. Co.,* 39 Am. R. 277 ; *Franklin Fire Ins. Co.* v. *Martin,* 29 Am. R. 271.

3. But it is said that the description of the property intended to be insured created an implied license to keep gunpowder, notwithstanding the prohibitory clause in the policy, upon the principle that the written clauses of the contract, where there is antagonism between the two, overcome the printed clauses.

This argument assumes that there is an antagonism between the written and printed clauses of the policy, an assumption that the law will not countenance. Says Wood on Insurance 129, " All the stipulations in a policy, both printed and written, are to be given effect if it can be done, etc." When we consider the circumstances under which this contract was made, I think it will be evident that no construction can be placed on it which will admit of an antagonism between its different clauses.

" When the policy is specific as to the subject-matter of the risk it cannot be extended by implication. Nor is evidence admissible

to show that the parties intended to have it cover matters not specified in it." Wood on Ins. 126.

In *Portsmouth Insurance Co.* v. *Brinkley, Administrator, etc.*, 2 Insurance Law Journal 842 (decided by the Virginia C. A.), there was insurance on a stock of goods *such as are usually kept in a grocery store*, but all kinds of burning fluids were prohibited.

The policy was held void.

In *Whitemarsh* v. *Charter Oak Insurance Co.*, 2 Allen (Mass.) 581, the building was described as occupied *as a provision and grocery store*. Oil, sulphur, and matches were prohibited. And it was contended that the description of the use to which the building was to be applied gave license, by implication, to keep such articles. The court held that, in the face of the express terms of the agreement, no such license could be implied. No strained construction will be put on a contract to imply a license to do what the contract positively prohibits.

4. In the face of the facts above set forth the court assumed to decide, without submitting the question to the jury, that there had been a waiver of the condition against gunpowder, and instructed the jury, at the instance of the plaintiffs, " that they are instructed to find for the plaintiffs, unless they should believe that the defendant had satisfactorily established the defense based on the averment that plaintiffs willfully burned or procured the burning of the storehouse."

This instruction excluded from the consideration of the jury all questions relating to the violations of the conditions of the policy by the plaintiffs.

*S. M. Shelton*, of counsel for the appellant, argued the case orally.

*Miller, Smith & Hirsh*, for the appellees.

1. The court will perceive that the second charge for the plaintiffs is invulnerable to the present assault.

The law is correctly propounded in the instruction.

When testimony is convincing it is proof.

As defined by Bouvier, " Proof is the conviction or persuasion

of the mind of a judge, by the exhibition of evidence of the reality of a fact alleged."

When the jury was informed, as in this instruction, that if the *proof* (not the evidence, which is the medium of proof) " leaves the mind in a state of serious and perplexing doubt as to the guilt or innocence of the party (who is entitled to recover unless guilty of arson) it will not warrant a verdict against him," the jury are really told that they must be *satisfied* that the loss was caused by the fraud of the plaintiffs before depriving them of their property.

For that mind which is in a state of *perplexity* and doubt concerning any proposition of fact cannot be held to be *satisfied* of its truth.    *Hill* v. *Goodyear*, 4 La. 233.

2. Defendants, defeated upon questions of merit, seek a forfeiture of its obligations upon the technical ground, " That gunpowder was kept without written permission in the policy," and this prohibition, of course, buried in the closely printed conditions spread over the body of the policy.

The question is, are the plaintiffs to be defeated by their keeping a small quantity of gunpowder, as a part of their general stock of groceries, and which, as has been shown, it was the custom and usage of all merchants in the same kind of business to keep as a part of their general stock of groceries, and which usage and custom was known to the agent of said company procuring the risk ?

The court will observe that the keeping of gunpowder does not enhance the premium, and there is no proof that the fire was caused by gunpowder ; Shuster testifies that they only had one-half of a pound of gunpowder on hand at the time of the fire, and he is not contradicted in any way.

It is admitted by Bradfield, the agent of the defendant, that he had knowledge of this usage, and we respectfully· submit that this knowledge must be imputed to the defendant, and the delivery of the policy under these circumstances estops the company from shirking liability.

But, independently of any knowledge of Bradfield, in the light of the best considered cases, we are of the opinion that this defense cannot avail the appellants.

In *Phœnix Insurance Company* v. *Taylor*, 5 Minn. 492, the insurance was on a stock of goods consisting of a general assortment of dry goods, groceries, crockery, boots and shoes, and such goods as are generally kept in a general retail store. By a printed clause the keeping of *gunpowder* was prohibited, unless specially consented to in writing on the policy.

It was held that the written portion prevailed over the printed, and that the written words would authorize the keeping of *gunpowder*, it being proved that it was usually kept in general retail stores. The court said : " In the interpretation of such instruments it is always to be kept in sight that the main portion of the policy, with all its conditions and restrictions, is in a printed form, intended to be sufficiently general to meet all cases, and prevent the necessity for drawing a policy for each risk taken, which would very much retard and embarrass the transaction of such business, and that the written part inserted by the parties is more immediately expressive of their meaning and intention concerning the contract they entered into than the printed portion. This is a rule of construction, therefore, applicable to such instruments, which gives to the written portion of them controlling force when there is any conflict or want of harmony between it and the printed stipulations. Ang. on Ins., par. 14, 15.

" All such articles are just as clearly embraced in the policy as if each article thus necessarily used was enumerated at length. Insurance companies must be deemed to be familiar with the materials necessary to the carrying on any trade or business the ' stock in trade' of which they insure, and in issuing the policy they must be deemed to have intended to include such materials in the risk." See *Bryant* v. *Poughkeepsie M. Ins. Co.*, 17 N. Y. 200 ; *Harper* v. *Albany Mutual Ins. Co.*, 17 Ib. 194 ; *Harper* v. *New York City Ins. Co.*, 22 Ib. 441 ; *Delonguemere* v. *Tradesmen's Ins. Co.*, 2 Hall 589.

3. But the defendant's agent knew that plaintiffs were keeping gunpowder, and intended to keep it as a part of their stock, and his knowledge was the knowledge of the company, and the latter is now estopped to set up such fact as a breach of the condition of the policy.

The general principle contended for has been established by this court; and it simply remains to determine whether its application is justified by the facts of this case. *Rivara* v. *Queen's Ins. Co.*, 62 Miss. 729.

"A condition in an insurance policy prohibiting the use and deposit of certain articles may be waived if the agent taking the insurance knew at the time it was taken that the prohibited articles were used or kept on the premises. Flanders on Fire Ins. 524.

"In such case, the insurance company cannot claim that it has been wronged or deceived, and to permit it to issue a policy and take the benefits of the contract, knowing at the time that it is not bound thereby, and afterward to avoid liability thereon, upon the ground that something existed or did not exist of which the company or its agent was fully aware at the time the contract was made, would be repugnant to that sense of justice and morality which is and should be inculcated by law."

Inspired by the highest sense of right and justice, the courts in such cases as *Insurance Co.* v. *Wilkinson*, 13 Wall. 222 ; *Planters' Ins. Co.* v. *Myers*, 55 Miss. 479 ; *Van Schaick* v. *Niagara Fire Ins. Co.*, 68 N. Y. 434, etc., have advanced the line of judicial thought abreast of the enterprising and practical spirit of the age.

This court in *Planters' Ins. Co.* v. *W. E. Myers*, 55 Miss. 479, supports the doctrine that an agent of a fire insurance company, whose duties are limited to *soliciting* of contracts of insurance, the delivery of the policy, and the reception of the premium, binds the company by his acts done and knowledge acquired while conducting the negotiations for the risk ; and the principle of *that* case is decisive of the *one* at bar.

It must be conceded that the knowledge of Klein & Fairchild is the knowledge of the defendant, and when the plaintiffs applied to Klien & Fairchild for the insurance, and were by them referred to Bradfield, *sub-agent, local agent, solicitor,* or *clerk,* by whatever title designated, for the purposes of this contract, Bradfield became the repository of such knowledge as could have, or would have, been conveyed to said Klein & Fairchild.

*R. S. Buck,* on the same side.

Counsel, in his brief, finds fault with the instruction given for the plaintiffs in a manner that we think is hypercritical in the extreme. He puts upon the words "clear and convincing" the construction of what would be inferred by the words, to the exclusion of every reasonable doubt; clearly the charge does not say so, but to the contrary. It enabled plaintiffs to escape the charge of fraud by taking refuge in that asylum of the guilty, "reasonable doubt." But the instruction gives the law of the case. 2 Greenleaf Ev. 408.

This court is referred to the first instruction for the plaintiff as being objectionable to appellant's defense. We simply refer to the case of *Swann* v. *West et al.*, 41 Miss. 104, as being the law of this question.

When Van Os wrote to Klein & Fairchild for terms of insurance, they replied, referring him to Bradfield. This constituted Bradfield the agent of the company, and his knowledge of the circumstances of the insurance was binding on the company. *Rivara* v. *Queen's Insurance Co.*, 62 Miss. 720 ; *Bodine* v. *Fire Insurance Co.*, 10 Am. Rep. 566.

*A. B. Pitman*, on the same side.

1. The first instruction for the plaintiffs withdrew from the jury the defense based on the keeping of gunpowder. There was no sort of conflict in the evidence on this point. The plaintiffs were keeping a small quantity of gunpowder before and at the time of the taking out of the policy, and continued to keep it.

But the evidence also showed without any conflict, indeed, by judicial admission, that the agent who represented the company in making the contract of insurance knew that it was the custom of plaintiffs to keep gunpowder, and that they then had it on hand and would continue to do so. The court justly, as we think, decided that, with that admission, the company could not defend on the ground that gunpowder was kept. *The Lancaster Fire Insurance Co.* v. *Lenheim*, Am. Rep. 778, note ; *Rivara* v. *Queen's Insurance Co.*, 62 Miss. 721.

2. The second instruction for the plaintiffs is complained of because the words "clear and convincing" express the same idea as

" reasonable doubt." The first clause of the charge expressly negatives, *in totidem verbis*, the idea that the rule excluding the criminal law prevails in a civil case ; nor is it true that the words clear and convincing import the same meaning as if qualified by the words " beyond a reasonable doubt."

The second instruction given for the defendant is still more clear in defining the character of the issue and the amount and character of the testimony requisite to its support, and tells the jury they may find on a preponderance of evidence merely ; and yet, at defendant's own request, the court uses stronger language than he used at the instance of plaintiffs in the charge complained of, because defendant's instruction tells them that they must not find the existence of this fact " except from a preponderance of evidence *which they believe to be true, and which fully satisfies their minds.*"

*A. B. Pittman* also made an oral argument.

. Cooper, C. J., delivered the opinion of the court.

The second instruction given for the plaintiffs, and the second for the defendant, announced practically the same rule for, the guidance of the jury in determining what quantity of evidence was required by law to warrant it in finding a verdict for the defendant upon the ground that the plaintiffs had set fire to the store and burned their own goods. If the rule was erroneous it was invoked as well by the defendant as the plaintiffs, and the defendant cannot assign it for error.

By the first instruction for the plaintiffs the jury was told that it should find a verdict for the plaintiffs, unless it believed, from the evidence, that the plaintiffs fraudulently burned the store, but notwithstanding this instruction was given, many others were asked and obtained by the plaintiffs upon the effect of notice by Bradfield, the agent by whom the policy was delivered to them, that they kept gunpowder in stock, and upon the custom of merchants of their class to keep gunpowder for sale. Thus the jury was first told that the defense set up by the company, that the policy was avoided by the keeping of gunpowder, could not avail, and then it was submitted to it to determine the very question

whether it might not avail. This should not have been done, and unless the first instruction was warranted by the facts the judgment must be reversed. The authority of the agent Bradfield seems to have been limited to receiving and forwarding applications for insurance, delivering the policies transmitted to him by the agents at Vicksburg, and receiving and remitting the premiums paid. We have held that notice to such an agent is not notice to the company. *Insurance Company* v. *Sorsby,* 60 Miss. 302.

The insurance as expressed on the face of the policy was upon "the general stock of merchandise, consisting of dry goods, clothing, and groceries." By a printed clause of the policy it was provided that it should be void if the assured should keep gunpowder without the written consent of the insurers indorsed on the policy. It is contended that keeping gunpowder in stock (which it is admitted was done) did not avoid the contract; first, because it was the custom of merchants of the class of the assured to keep the same; and, secondly, because gunpowder is embraced in the words used to describe the goods insured, and being so included there is a written consent or authority in the face of the policy that it might be kept. From an examination of the authorities cited by counsel and of others we deduce these as the rules of construction of insurance policies.

The language where ambiguous is to be construed most favorably for the assured, and where general words of description are used it is competent to show what is included in them in the usual course of business, as what is "a general stock of merchandise" or "such goods as are usually kept in a country store" or "the stock in trade of the assured," etc., etc.; where there is a conflict between the written and printed parts of a policy the written will prevail, and, therefore, where by a printed clause the keeping of certain articles is prohibited but such articles are embraced in the fair import of the words used in describing the goods insured, the keeping of such things does not avoid the policy; but where, by the printed clauses, there is a prohibition as to certain articles, and the written parts of the policy do not embrace

the prohibited things, then no usage or custom can be resorted to to add to the terms of the contract an implied permission to deal in the prohibited articles; where, following general words of description of the property insured, there are words of restrictive enumeration, such as "consisting of," "composed of" such or such goods, those things which but for the limited words would have been included in the general description but are not included in the restricting words are excluded.

Thus, if in this case the insurance had been upon "their general stock of merchandise," the assured might have shown what composed such general stock, and what was understood to be included in it by usage and custom, and if "gunpowder" was a part of such stock, then it might have been kept by them, although by a printed condition of the policy it was prohibited. But the written clause of the policy insures, not the general stock, but that "consisting of dry goods, clothing, and groceries," and these words exclude all things not being "dry goods, clothing, or groceries." It devolved, therefore, on the plaintiffs to prove either that the defendant had waived this condition of the policy, or that gunpowder was "dry goods, clothing, or groceries" within the fair import of these words as used by the contracting parties, to discover which resort may be had to the usages and customs of trade, by which a narrower or broader meaning may be affixed to them. The witnesses for the plaintiffs did not testify that gunpowder is dry goods, clothing, or groceries, nor that, according to the usages of trade, it is included in such words. The extent of their testimony was that persons keeping such a stock as the plaintiffs kept, a general stock of merchandise, usually kept powder as a part of that general stock. As we have said, this was not the question for inquiry. The inquiry should have been whether gunpowder was included in the words used in the policy describing the stock insured.

*The judgment is reversed and cause remanded.*