Coca Cola Bottling Works, Inc., of Columbus *v.* Petty.

(In Banc.  Feb. 10, 1941.  Suggestion of Error Overruled, March 10, 1941.)

[200 So. 128.  No. 34334.]

John F. Frierson, of Columbus, for appellant.

Wm. P. Stribling, of Columbus, and **Jas. A. Cunning-ham**, of Booneville, for appellee.

634

**Smith, C. J.**, delivered the opinion of the court.

The appellee purchased a bottle of coca cola at a cafe, and on drinking part of it discovered animal matter therein, part of which went into his·stomach, causing him to vomit and become for some time quite sick. The coca cola was purchased by the proprietor of the cafe from the appellant, by whom it was also bottled. The evidence for the appellee warranted the jury in believing that when uncapped at the cafe, the cap and the contents of the bottle were in the same condition as when the bottle was delivered to the cafe by the appellant. The appellant's evidence disclosed its method of bottling coca cola sold by it, which was, in substance, as follows: Bottles were placed on a machine which automatically cleansed, by rinsing and disinfecting them. After which, they were inspected by one of the appellant's employees, aided by a powerful light therefor. What then occurs can best be stated in the language of a witness:

"Q. How far is it from this inspection with that bright light before it strikes on to the machine that shoots the syrup in it? A. About four feet.

"Q. State whether or not that goes under a cover. A. No, sir, it don't go under cover.

"Q. It is open and goes on there and is automatically set? A. Yes, sir.

"Q. How is that syrup put in the bottle? A. That syrup comes from a half inch line upstairs where syrup is put into bins through a strainer. On this syrup line we have a fine mesh wire strainer. In other words when

it is poured out of the barrel it is pumped through a close mesh cloth.

"Q. Something like cheesecloth? A. It is closer mesh than cheesecloth. The syrup is strained into the barrel, then on the way in the line there is another strainer, a metal strainer, a real fine mesh wire, then it comes down and is put in this bottle automatically, is not touched by hand.

"Q. What is introduced in the top of each bottle? A. There is a rod about long as my finger, when it comes up to it this rod comes down into the bottle.

"Q. And it automatically releases? A. It automatically releases when it puts an ounce of syrup in this bottle, the quantity of syrup that is desired.

"Q. State whether or not that is covered? A. It is covered all the time and has a solid metal top on it. It is not air tight but it is a solid top.

"Q. It goes on around and following the introduction of that syrup what is next introduced into that bottle? A. The water and gas. The water and gas is introduced together.

"Q. That is on a revolving wheel isn't it? A. Yes, sir.

"Q. And that water and gas is being introduced as it revolves around there? A. Yes, sir.

"Q. When is it filled? When does the filling occur? When is it completed? A. When it first goes on the machine, in other words the machine is running sixty bottles a minute from the time it goes on the water machine until it comes off to be filled with water.

"Q. Is it immediately capped? A. It revolves about four feet before it is capped.

"Q. In that four feet— A. There is a cap put on it. It is sealed then air tight.

"Q. And there is no human hand touches it? A. No human hand touches it.

"Q. After it is sealed state whether there is anything other or further toward an inspection? A. There is two

men that work in an inspection position. They have high-powered lights. They place these bottles over this light in this position and look at them, then they turn them over this position, then take them up and invert them in this position.

"Q. That gives how many in each hand? A. Three bottles in each hand.

"Q. And invert it over this light? A. Yes, sir.

"Q. Two men who are doing it? A. Yes, sir.

"Q. State whether or not the machinery and appli-. ances and protective equipment, of what order are they, Columbus Coca Cola Bottling Works, what precautions, what degree of precautions? A. We use all the latest precautions that can be had, all the new devices are placed, the new devices are placed on this machine, any late model device that is found they place them on these machines."

The appellant's complaints are that the court should have granted its request for a directed verdict in its favor; and if not, that error appears in an instruction granted the appellee and that the damages awarded are excessive.

When the appellee closed his case, the jury would have been warranted in inferring from his evidence that the animal matter would not have been in the bottle of coca cola had the appellant exercised due care in bottling it. Blount v. Houston Coca Cola Bottling Co., 184 Miss. 69, 75, 185 So. 241. Counsel for the appellant say that the evidence for the appellant discloses (1) that it exercised due care in bottling the coca cola, and (2) discloses that the animal matter could not have been in the bottle when it was capped and delivered to the proprietor of the cafe. This evidence does not disclose that this particular bottle was filled in the manner described by the appellant's witness, nor that all coca cola bottled and sold by the appellant was bottled in the manner described by its witness. The evidence only discloses its customary method therefor. But that aside, negligence of the appellant's

employees could have appeared in putting the syrup, water and gas in the bottle. The cheesecloth through which the syrup was strained into the bottle may not have been inspected before being used therefor, and the evidence does not disclose exactly how the water and gas were put into the bottle. All this evidence discloses is that the animal matter would not have been in the bottle had the appellant's employees exercised due care in operating the bottling machine, and in inspecting the bottles after the coca cola was placed in them. If this animal matter was in this bottle, the jury, under the maxim res ipsa loquitur, were warranted in believing that it got into the bottle through the negligence of the appellant's employees. The court therefore committed no error in refusing the appellant's request for a directed verdict.

The instruction for the appellee complained of is as follows: "The Court charges the jury for the plaintiff, that if you believe from a preponderance of the evidence that the Coca Cola Bottling Company, put up this bottle of coca cola in question, and put it on the market for use by the public for beverage purposes, and that it contained worms, grubs, or maggots, such as exhibited as evidence on the trial of this cause; and that plaintiff innocently drank the bottle of coca cola, and with it such said worms, or foreign substance and was thereby made sick and damaged, then the Court says to you, that this affords facts from which you may infer negligence in putting up and putting on the market such said coca cola; and it is not the burden of plaintiff to just show how said foreign substance came to be in the bottle of said coca cola."

The instruction is based on the maxim res ipsa loquitur, and the appellant says that it does not set forth all of the elements required by that maxim. We will not pause to inquire whether this is true for the appellant cannot complain thereat for the reason that it requested and obtained from the court an instruction which permitted the jury to do exactly what the one here complained of does. That instruction is, as follows: "The court in-

structs the jury for the defendant that to establish this case it becomes necessary for the plaintiff to prove first, that the bottle of Coca Cola from which plaintiff drank at the time alleged was manufactured and bottled and sealed up by the defendant company and second, that the ingredients complained of were in the bottle at the time it was delivered to the plaintiff in the Bell Cafe and third, that the plaintiff drank the contents of the bottle including the alleged foreign substance and suffered damage thereby."

Liverpool & London & Globe Ins. Co. v. Van O's, 63 Miss. 431, 56 Am. Rep. 810; Wilson v. Zook, 69 Miss. 694, 13 So. 351; Hitt v. Terry, 92 Miss. 671, 46 So. 829; Ross v. Louisville & N. R. Co., 181 Miss. 795, 181 So. 133. We cannot say that on the evidence the verdict for $500 is excessive.

Affirmed.