222 Miss. 297 (1954)
75 So.2d 731
LAUREL COCA-COLA BOTTLING CO.
v.
HANKINS.
No. 39361.
Supreme Court of Mississippi.
November 22, 1954.
*299 Beard, Pack & Ratcliff, Laurel; Watkins & Eager, Jackson, for appellant.
*300 L.D. Pittman, R.S. Tullos, O.O. Weathersby, Raleigh; Barnett, Jones & Montgomery, Jackson, for appellee.
*302 LEE, J.
Mrs. Gladys Hankins obtained a judgment in the Circuit Court of Smith County against Laurel Coca Cola Bottling Company, a corporation, in the sum of $12,000, and the Bottling Company appealed.
The suit was a claim for damages, alleged to have been sustained by her as the result of drinking a portion *303 of the contents of a coca cola. The gravamen of the complaint, for all practical purposes, is found in the following paragraph of the declaration to wit: "That this coca cola partially drank by plaintiff on April 3, 1952, in Smith County, Mississippi, contained a foreign substance known as `Acid Iron Earth Water,' and that the defendant company manufactured, sealed, delivered and sold said Coca Cola under an implied warranty that same was pure and wholesome and fit for human consumption, and plaintiff alleges that the violation of this implied warranty by the defendant company was and is the cause of plaintiff's discomforts:"
Mrs. Hankins bought the coca cola in question on the morning of April 3, 1952, at the Middleton Store in the Center Ridge Community of Smith County. Her proof, in which she was corroborated, and which was not disputed, showed that she carried the drink home, a short distance away, and put it in the refrigerator. It was conclusive that the defendant bottled the coca cola, and there was no proof that it was tampered with between the time of bottling and drinking. Some time after dinner, about 1:30 o'clock, she opened the bottle and drank a portion of the contents. As she described it, immediately her throat closed, there was a feeling like a coal of fire in her stomach, and when she got her breath, what she had drunk gushed out. Some of the expelled substance got on her dress and a rug and made holes in those articles. She took a drink of water, turned deathly sick and vomited. At the suggestion of a nearby neighbor, she ate a quantity of butter, but failing to obtain relief, she went to Dr. C.A. Kennedy at Taylorsville. He gave her a prescription which she took according to directions, but afforded her no relief. The next morning she went to Dr. W.M. Coursey at Raleigh. She complained of a burning sensation in her mouth and stomach and was nauseated and vomiting. From the history and examination, he diagnosed her trouble as gastritis, or an inflammation of the lining of the stomach. He saw *304 the residue in the bottle, which was at least half full, and observed several large gelatine-like "clumps" in it, with the appearance and color of frozen coca cola. There was some free liquid, but, in his opinion, the lumps would not have run out, if the bottle had been turned upside down. He gave Mrs. Hankins a hypodermic and prescribed an alkali. At his suggestion, the husband of Mrs. Hankins carried the bottle and its contents to Mississippi State College for analysis.
Mrs. Hankins returned home, and the next day, having failed to obtain relief, she entered the hospital and clinic of Dr. W.C. Simmons at Bay Springs. From the history and his examination, Dr. Simmons was of the opinion that she had every symptom of acute gastritis with neurasthenia, for which he treated her. After some time, concluding that she was somewhat psychotic, he sent her to Dr. R.T. McLaurin at Laurel for X-rays and a complete internal examination. She then returned to Dr. Simmons' hospital and was a patient therein off and on until some time in October following.
Finally she went to Touro Infirmary in New Orleans on December 6th, where she was treated by Dr. George Welch, who was of the opinion that she was made acutely ill by drinking the coca cola. Various tests were made, including a gastroscopic examination, and finally an exploratory operation, when it was found that she had some inflammation in the upper third of the stomach. He was positive in his opinion that she was not psychotic, but initially sustained a physical injury.
Prof. S.J. Few, a chemist at the college, analyzed the remaining contents in the bottle. He made known his findings to Dr. M.P. Etheredge, his superior, who called Dr. Coursey over the telephone that same evening. However, the substance of that report is not in the record, although several days later, on April 9, 1952, he wrote a letter to Mr. Hankins about the analysis as follows:
*305 "We called Dr. Coursey approximately 7:00 p.m. after you were here about the middle of the afternoon one day last week, and we reported to him that the liquid in the Coca-Cola bottle did not contain any common poisons, and it seemed to be what is commonly known as an acid iron earth water. The principal constituent in an acid iron earth water is ferric sulfate, and it would be rather acid in nature. We understood from Dr. Coursey over the telephone that he would know how to treat your wife, and we sincerely trust that she is now all right. This examination was made by S.J. Few, Assistant State Chemist."
Prof. Few testified concerning his analysis. He said that coca cola contains phosphoric acid, and that acid iron earth water contains ferrous sulphate, and that when these two substances are combined, they form iron phosphate and leave a quantity of sulphuric acid. He also testified that there was a considerable amount of solid ferric phosphate and ferrous sulphate, or sulphuric acid, in the bottle, although he did not determine the exact quantity. However, there was enough to be harmful, if taken internally, and he wanted the doctor to know. That was the reason for the call by Dr. Etheredge to Dr. Coursey.
Dr. McLaurin, to whom Dr. Simmons sent Mrs. Hankins, testified generally as to the effect of sulphuric acid, but, on objection by the plaintiff, he was not permitted to testify concerning his examination of Mrs. Hankins. Dr. Kennedy's testimony was likewise limited because of objection on account of a privileged communication.
Sulphuric acid is poisonous, and, according to the evidence, damage from its use depends on the quantity. In concentrated form, it will burn and leave scars. Plaintiff's evidence did not claim that it was concentrated. Besides, she vomited immediately, and evidently only a small quantity of the solution remained in her stomach.
*306 The defense was twofold: (1) Defendant's method of bottling was so efficient that it was impossible for acid iron earth water to get into the bottle, and (2) the plaintiff was passing through the menopause; she was troubled with nausea prior to drinking the coca cola; and her injury was greatly exaggerated.
The defendant went into great detail in explaining its method of manufacture and bottling, showing that it used the common and accepted process employed by coca cola manufacturers all over the country. The bottles were rinsed and washed many times, both inside and outside. Water, containing cleansing substances, was forced into the bottles through spigots, at high temperature and under pressure. In addition revolving brushes were used. It is sufficient to say that, under the proof, the defendant employed a very efficient process of bottling.
Because of the efficient and complete process of manufacture and bottling, the appellant argues with great zeal that its requested peremptory instruction should have been given.
(Hn 1) No legal principle is better settled in this State than that "When a manufacturer makes, bottles and sells to the retail trade, to be again sold to the general public, a beverage represented to be refreshing and harmless, he is under a legal duty to see to it that, in the process of bottling, no foreign substance shall be mixed with the beverage * * *." Coca Cola Bottling Company v. Chapman, 106 Miss. 864, 64 So. 791; Rainwater v. Coca Cola Bottling Co., 131 Miss. 315, 95 So. 444; Grapico Bottling Company v. Ennis, 140 Miss. 502, 106 So. 97; Coca Cola Bottling Works v. Lyons, 145 Miss. 876, 111 So. 305; Chenault v. Coca Cola Bottling Co., 151 Miss. 366, 118 So. 177; Blount v. Coca Cola Bottling Co., 184 Miss. 69, 185 So. 241; Nehi Bottling Company v. Lucas, 184 Miss. 693, 185 So. 561; Coca Cola Bottling Works v. Petty, 190 Miss. 631, 200 So. 128. (Hn 2) An injured person is not required to prove negligence. *307 Res ipsa loquitur applies. Blount v. Coca Cola Bottling Company and Coca Cola Bottling Works v. Petty, supra.
In Coca Cola Bottling Company v. Chapman, supra, the system for cleansing and filling bottles was complete and there was watchfulness to prevent the mouse from getting into the bottle. Nevertheless it did. In Coca Cola Bottling Works v. Lyons, supra, it was said that: "* * * if the broken glass was in the bottle when it left the factory, the manufacturer is liable for the damage done the consumer, even though the method of bottling was complete and perfect." (Emphasis supplied.) In Coca Cola Bottling Works v. Petty, supra, the opinion set out at length, from questions and answers which appeared in the record, a description of the bottling process. The customary method was shown. However, there was no way to prove that the particular bottle was thus treated, just as in the case before us, it was impossible for the defendant to identify this particular bottle from the 40,000 or 50,000 which it bottled in one day, and truthfully to say that it was subjected to the efficient process, which was being utilized. The Court there said: "If this animal matter was in this bottle, the jury, under the maxim res ipsa loquitur, were warranted in believing that it got into the bottle through the negligence of the appellant's employees."
(Hn 3) Whether or not the foreign substance was in the bottle when it left the appellant's plant and was delivered to the Middleton Store was a question for the jury, and there was no error in refusing the peremptory.
(Hn 4) There was testimony by Mrs. Merle Windham, an employee of Dr. Kennedy, that Mrs. Hankins, prior to April 3, 1952, came to the doctor's office for estrogen shots every week or two, and that she was nervous and complained of ulcers in her mouth, pain in her stomach, and almost everything in general. Mrs. Hankins admitted that she took estrogen and theelin, that she was at times nervous, but denied that she ever had any stomach *308 trouble. Mrs. G.L. Middleton and James Blakeney testified that, on the morning when the coca cola was purchased, Mrs. Hankins showed her tongue, which was red, one of the symptoms of menopause, and was complaining of an upset stomach. This was denied by Mrs. Hankins and her witness, who stated that this episode occurred the next day, after she had drunk the coca cola and when she was on her way to Dr. Coursey's office. This dispute was, of course, resolved by the jury.
It was contended in the court below, and is contended here, that the foreign substance in the coca cola, as charged in the declaration, was acid iron earth water; that the report of Dr. Etheredge, a copy of which was given to the appellant in compliance with its motion for a bill of particulars, revealed that the coca cola contained none of the common poisons; that, when Prof. Few testified that it contained sulphuric acid, a poison, there was a material variance between the allegations of the declaration and the proof; that such evidence was inadmissible; and that appellant was taken by surprise.
(Hn 5) Mrs. Hankins' complaint was that she was injured because of drinking coca cola with acid iron earth water in it. Prof. Few explained that, by the common poisons most often found is meant arsenic, lead, mercury, tin, and the alkaloids such as strychnine. The report of Dr. Etheredge stated that the analysis was made by Prof. Few. There was no showing that the appellant interviewed Prof. Few, or sought to elicit from him any information whatever as to the result of his analysis. If this had been done, undoubtedly he would have revealed the chemical changes which occurred and would have given information about the estimate of sulphuric acid in the contents, just as he did as a witness in the case. His oral testimony was not at variance with the allegations of the declaration. On the contrary, it was simply an elaborate explanation of those allegations. There was no material variance. The evidence was competent *309 and admissible. And under the circumstances, the appellant was in no position to claim surprise.
Appellant also argues that the refusal of its requested instruction that the jury could award no damages for a permanent injury, and the granting of appellee's instruction that the jury could do so constituted errors.
(Hn 6) The inception of Mrs. Hankins' trouble, according to the evidence, occurred on April 3, 1952. She was under constant medical attention, in and out of a hospital thereafter. Finally on December 6th following, she went to Touro Infirmary. She submitted to many tests in the course of her examination. Finally an exploratory operation was performed, when it was found that the upper third of her stomach still had some inflammation. Thus her treatment extended from April 3, 1952, until January 15, 1953, at which time she still had trouble. When the cause was tried in October 1953, according to the proof, she was still nervous, sick and complaining, she was taking medicine each day; and was unable to do her usual work. Prior to the injury, she had performed her household duties and had helped about the farm. Under such circumstances, it was for the jury to say whether or not she sustained a permanent injury. There was no error in refusing and giving the instructions complained about.
(Hn 7) The appellant further contends that the trial court erred in giving plaintiff an instruction which authorized the jury, in assessing damages, to take into consideration hospital, doctors' and drug bills "necessarily created for her treatment" as a result of drinking the coca cola. It is said that she was a married woman and the payment of those bills was the obligation of her husband.
Of course the word should have been "incurred" rather than "created," but this error could not have been misleading or prejudicial. (Hn 8) Bills, aggregating over $3,800, charged to Mrs. Hankins, and over $700 charged to her husband, were introduced in evidence. Mrs. Hankins *310 was an adult, and under Section 451, Code of 1942, could contract for the payment of such bills. Skehan v. Davidson Company, 164 Miss. 518, 145 So. 247; Montgomery Ward & Company v. Nickens, 203 Miss. 195, 33 So.2d 815. The evidence was sufficient to show her personal liability to the extent of the charges against her. Besides these bills were paid by the sale of their joint property. They sold their car and other personal property and gave a deed of trust on their home to get money for that purpose. There was no prejudicial error on this account.
The instructions, both for the plaintiff and the defendant, informed the jury that it could not find for the plaintiff unless the bottle contained the foreign substance when it left the factory and was delivered to the Middleton Store. The defendant obtained instructions to the effect that if the jury believed that the defendant's method of manufacture was so efficient that the acid iron earth water could not get in the bottle before it was delivered to the Middleton Store, they should find for the defendant.
(Hn 9) The case was properly submitted to the jury. No prejudicial error appears in the record. The proof showed a substantial and painful injury, which, from the length of time which it has existed, warranted the jury in finding that it is permanent in character. It cannot be said here, on the proof, that the amount is so excessive as to be shocking to the conscience or evincing passion or prejudice.
It follows therefore that the cause ought to be, and is, affirmed.
Affirmed.
McGehee, C.J., and Hall, Holmes and Ethridge, JJ. concur.
*311 McGEHEE, C.J., Separate Concurring Opinion.
I am not in full accord with the conclusion of the other four judges in regard to the point mentioned in paragraph 18 of the main opinion herein, and I am of the opinion that the plaintiffs should have made a full disclosure in response to the motion and order for a bill of particulars, since the declaration did not clearly charge that the bottle of coca cola contained sulphuric acid, and it is readily understandable to me that the counsel for the defense may not have deduced from what was alleged in the declaration that it was intended to be charged that the bottle contained sulphuric acid. However, I do not feel justified in dissenting from the contrary views of the other four judges who think there was no reversible error in the action of the trial court in ruling on the point in question. Then too, I am fully confident that if the case should be passed on by the entire membership of the Court the same result would be reached as that favored by the other four judges who participated in the decision. I therefore concur in the affirmance of the case.